COMMONWEALTH *vs.* NORMAN J. STONE.

Suffolk.    May 5, 1947. — June 24, 1947.

Present: FIELD, C.J., LUMMUS, QUA, RONAN, & SPALDING, JJ.

*Evidence,* Relevancy and materiality.    *Error,* Whether error harmful.
    *Practice, Criminal,* Exceptions: whether error harmful.

At the trial of an indictment for larceny occurring in March, 1945, where
    evidence showed that the crime was committed through false pre-
    tences as to the source and quality of radio tubes sold by the defend-
    ant to a certain purchaser, who paid the defendant for them, it was
    prejudicial error to admit evidence that in June, 1944, the defendant
    by false pretences had procured from another prospective purchaser
    of radio tubes a check payable to the seller and had indorsed the
    seller's name on the check, and that no tubes were delivered in such
    transaction: such evidence was of an independent transaction not
    reasonably near in time to the crime charged in the indictment being
    tried, nor so similar to or connected with it as to show unity of plot
    and design and that the transaction was a part of a common plan or
    scheme to defraud.

INDICTMENT, found and returned on June 6, 1945, charg-
ing that on March 7, 1945, the defendant stole money of
William E. Andrews in the amount of $8,500.

The indictment was tried before *Hudson,* J.

*S. H. Cohen & A. Di Cicco, Jr.,* for the defendant, sub-
mitted a brief.

*Edward M. Sullivan,* Assistant District Attorney, for the
Commonwealth.

SPALDING, J.    In this prosecution for larceny the jury
found the defendant guilty.    The case was tried under G. L.
(Ter. Ed.) c. 278, §§ 33A–33G, and comes here on appeal.
The assignments of errors bring before us several questions
of evidence.

There was evidence from which the jury could have found
these facts: The defendant in March, 1945, represented to
one Andrews that he had purchased sixty-five thousand
radio tubes from a well known manufacturer for $6,500; that
the tubes were army and navy rejects and were all brand

new; and that he had about forty thousand of them which he would sell for twenty-two cents apiece. The defendant exhibited to Andrews a bill of sale of the tubes from the manufacturer. Samples of the tubes were then produced and five hundred of them were tested by Andrews and all were found to be usable. Subsequently about forty thousand tubes were sold by the defendant to Andrews under a bill of sale which recited that fifty per cent of the tubes were "guaranteed to be usable." For these tubes Andrews paid the defendant $8,000. Approximately ninety per cent of them turned out to be worthless. The tubes sold did not come from the well known manufacturer as the defendant represented, but were purchased by him from junk dealers for approximately $150. Many other facts relating to negotiations between the defendant and Andrews could have been found but they need not be recited. Those set forth above are all that are material to the questions herein discussed.

The defendant's sixteenth assignment of error raises a question as to the admissibility in evidence of a transaction between the defendant and one Sternlieb. The Commonwealth was permitted, against the exception of the defendant, to show through its witness, Sternlieb, that in June, 1944, the defendant obtained $750 from him in the following circumstances. The defendant, who was indebted to Sternlieb, showed him an invoice for tubes from the Raytheon Manufacturing Company and stated that he could get as many tubes as he wanted. He then said, "Here is a chance for me to pay you back what I owe you and give you a profit besides." The defendant then accompanied Sternlieb to a room in a building on Summer Street where he introduced him to one Fisher who, he said, was a "liaison officer for Raytheon Manufacturing Co." In this room there were "a lot of tubes laying around." Later the defendant told Sternlieb that he (the defendant) could purchase the tubes which they had seen at Fisher's for $750. Sternlieb, upon assurances from the defendant that he would be given a bill of sale for the tubes (represented to be between twenty-five thousand and thirty thousand in number) and that the sale

was not in violation of the OPA regulations, gave the defendant a check for $750 payable to Fisher. Later, after the check had been paid by the bank on which it was drawn, Sternlieb informed the defendant that he had learned that the check, although purporting to bear the indorsement of Fisher, was not indorsed by him. The defendant agreed that this was so and that he himself had made the indorsement. The defendant then told Sternlieb that he would lose nothing and suggested that he might have recourse against the bank that cashed the check. Sternlieb testified that he never got delivery of the tubes for which the check was given.

This evidence ought not to have been admitted. If it was offered for the purpose of showing that the defendant entered into a contract with Sternlieb which he failed to perform, it was not relevant to the issues being tried and was harmful to the defendant. Its only object would be to lead the jury to infer that in another transaction the defendant proved to be unreliable. If on the other hand the evidence was offered as tending to show that the defendant had obtained money from Sternlieb by false pretences and in doing so had also forged Fisher's name on the check, it was likewise incompetent. Fairness to a defendant in a criminal case requires the rule that the commission by him of an independent crime cannot ordinarily be shown as evidence tending to show the commission of the crime charged. *Commonwealth* v. *Jackson*, 132 Mass. 16. *Commonwealth* v. *Farmer*, 218 Mass. 507, 512. *Commonwealth* v. *Kosior*, 280 Mass. 418, 423, and cases cited. *Commonwealth* v. *Green*, 302 Mass. 547, 552. It does not follow that, because the defendant committed a similar offence on another occasion, he committed the crime for which he is being tried. And there is the danger that, because a defendant appears to be a bad man capable of, and likely to commit, such a crime as that charged, a jury might be led to dispense with proof beyond a reasonable doubt that he did actually commit the crime charged. Moreover, it is not fair that a defendant in the course of a trial should be called upon to defend himself against accusations not set forth in the indictment.

In trials of indictments for larceny by obtaining money

or property by false pretences it has been held, as bearing on the defendant's intent, that his criminal conduct on another occasion is admissible, provided it is reasonably near in time and so connected with the crime charged in the indictment as to show unity of plot and design and that it was part of a common plan or scheme to defraud. *Commonwealth* v. *Jeffries*, 7 Allen, 548, 567–568. *Commonwealth* v. *Lubinsky*, 182 Mass. 142. *Commonwealth* v. *Stuart*, 207 Mass. 563, 568. *Commonwealth* v. *Dow*, 217 Mass. 473, 480. *Commonwealth* v. *Farmer*, 218 Mass. 507, 512–513. See Wigmore on Evidence (3d ed.) § 321. The evidence under consideration does not come within this rule. It related to an independent transaction which occurred nearly a year prior to the offence charged in the indictment. And it was not shown to be similar in design or plan. The only things common to the two transactions were that each related to the sale of radio tubes and in each the defendant could have been found to have acted dishonestly. Inasmuch as there was a substantial amount of competent evidence introduced by the Commonwealth tending to establish the defendant's guilt, it is possible that the evidence erroneously admitted did not affect the verdict. · But as to that we can only speculate. This evidence was of a highly prejudicial nature and we cannot say that the jury could not have been influenced by it. The doubt ought to be resolved in favor of the defendant. Whether guilty or innocent, he was entitled to be tried in accordance with law.

The conclusion reached renders a consideration of the other assignments of error unnecessary; these relate to questions of evidence which are not likely to arise on a retrial of the case.

*Judgment reversed.*