## COMMONWEALTH vs. RICHARD H. BRUSGULIS.

Middlesex. October 3, 1989. - January 18, 1990.

Present: LIACOS, C.J., WILKINS, NOLAN, LYNCH, & GREANEY, JJ.

*Assault with Intent to Rape. Evidence*, Prior misconduct.

At the trial of a defendant charged with assault with intent to rape, it was error for the judge to admit evidence of the defendant's prior bad acts as bearing on the issue of the defendant's identity because of a common pattern or modus operandi, where the Commonwealth did not demonstrate that the prior events and the circumstances of the crime charged had such similarities as to be meaningfully distinctive. [504-507]

INDICTMENT found and returned in the Superior Court Department on April 3, 1986.

The case was tried before *James D. McDaniel, Jr.,* J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Bernard Grossberg* for the defendant.

*Kathy Rabin*, Assistant District Attorney, for the Commonwealth.

WILKINS, J. Convicted of assault and battery (G. L. c. 265, § 13A [1988 ed.]), and assault with intent to rape (G. L. c. 265, § 24 [1988 ed.]), the defendant has appealed challenging the admission of evidence of prior assaults by him offered to identify him as the person who attacked the victim. The assault and battery conviction was placed on file with the defendant's consent. We transferred the defendant's appeal here on our own motion and now reverse the conviction for assault with intent to rape because there was an insufficient similarity between the circumstances of the prior bad acts and the circumstances of the commission of the crimes

charged to warrant the admission of evidence of the prior bad acts to prove identity.[1]

On December 18, 1985, shortly before 6 A.M., the victim, a forty year old woman, was jogging on a snow-covered asphalt bicycle path along Charles River Road in Watertown when she saw walking toward her a man about six feet tall, weighing between 180 and 200 pounds, with dark hair and a dark moustache. The man placed his hands on her shoulders, pushed her, and knocked her to the ground on her back. He slammed her head and shoulders to the frozen ground very hard four or five times. She never looked at the man directly. He told her to "shut up or I will kill you. Get up and walk, get up, you're coming with me, shut up." After looking around several times, suddenly he said, "Aw, go on, just forget it then." The man released the victim and "went off" across the street. There were no other eyewitnesses to this incident.

The victim reported the event to the police. She made a 90-to-95% certain photographic identification of the defendant. She identified the defendant in a line-up but was not 100% certain. She listened to tape recordings of voices, including the defendant's, and believed his voice to be that of the man who attacked her. The victim, who appears from the transcript to have been an intelligent and persuasive witness, identified the defendant at trial as her assailant.

The trial judge denied the defendant's motion in limine to exclude evidence of prior bad acts and, after hearing witnesses on voir dire, permitted the Commonwealth to intro-

---

[1]Our opinions in this area have generally referred to the admissibility of evidence of "prior bad acts." In some cases, however, the bad acts occurred after rather than before the events involved in the case before the court. See, e.g., *Commonwealth* v. *Lacy*, 371 Mass. 363, 366 (1976). The principles are the same whether the bad acts are prior or subsequent ones. The acts involved in this case occurred prior to events that led to the charges against the defendant, and we shall continue to use the phrase "prior bad acts." A technically more accurate description of the issue might be to refer to the question whether evidence of an extrinsic offense committed by the defendant is admissible. See *United States* v. *Beechum*, 582 F.2d 898, 902 n.1 (5th Cir. 1978).

duce evidence of (1) an attempted rape by the defendant in Arlington one afternoon in August, 1975, when he was a juvenile, as to which he was found delinquent, and (2) a 1981 noontime assault on a woman in Waltham as to which the defendant pleaded guilty. The judge ruled that the evidence was admissible to show a "common scheme or pattern or modus operandi or identity of him as the person who committed these crimes." He instructed the jury during the presentation of the Commonwealth's case that the evidence of the defendant's prior conduct was admitted "on the issues of common scheme, modus operandi, pattern of conduct and identification."

The victim of the first prior incident testified on voir dire that about 5 P.M. on August 22, 1975, when she was twenty-three years old, she was walking in a wooded area in the vicinity of St. Paul's cemetery in Arlington. A young man, younger than she, came out of the bushes.[2] He grabbed her and said six or seven times, "Come with me and I won't hurt you." He threatened her with a knife. He ordered her to take her shirt off and to climb over a fence. He then directed her to take off her shorts. He took his clothes off, pulled her down, and got on top of her. Just then a dog came along the path barking. The young man said, "Put your clothes back on." They climbed over the fence, and he said, "Go ahead, leave." She later identified the defendant as her assailant. There was evidence that in Juvenile Court proceedings the defendant admitted to his delinquency.[3]

The victim of the second assault testified on voir dire that on July 8, 1981, she was thirty-seven years old and working for a company in Waltham that was located near the Beaverbrook Reservation. During her lunch hour on that day she took a walk on a path in the reservation. She saw a naked

---

[2]The testimony of the witnesses on voir dire and before the jury does not differ in any material respect.

[3]We do not reach the question whether the admission in evidence of the outcome of the Juvenile Court proceedings was error. Nor do we need to pass on the defendant's claim that these incidents were in any event too remote to be admissible for any purpose.

man walking through the trees to her right. She tried to ignore him, but he appeared directly in front of her. He grabbed her and said two or three times, "You are coming with me." She said "no," as he was pulling her off the path toward the bushes. She started screaming as loud as she could. He said, "I wasn't going to hurt you," let her go, and "bolted." She ran away as well.

This second victim identified the defendant from a photographic array and later identified him at a probable cause hearing. In May, 1982, the defendant pleaded guilty to assault with intent to commit rape, open and gross lewdness, and assault and battery, and was sentenced.

At the charge conference (see Mass. R. Crim. P. 24 (b), 378 Mass. 895 [1979]), the judge stated that the only way the jury could consider the evidence of prior bad acts was on the issue of the identity of the defendant because of a common pattern or modus operandi. When he charged the jury, however, he told them that they also could consider the prior bad acts for the purpose of establishing the defendant's intent and state of mind. He added specifically that, if the jury should find beyond a reasonable doubt that the defendant assaulted the victim, the jury could consider evidence of the prior bad acts to determine the defendant's intent at the time of the assault.[4]

The general rule is that evidence that the defendant committed similar but unconnected crimes against different victims is inadmissible. *Commonwealth* v. *Welcome*, 348 Mass. 68, 70 (1964). *Commonwealth* v. *Stone*, 321 Mass. 471, 473-474 (1947). In the *Stone* case, the court held that it was reversible error to admit evidence of the defendant's unlawful

---

[4]We need not decide whether any reversible error resulted from the change in the charge from what was stated at the charge conference. Evidence of the earlier events might be admissible to prove a defendant's intent (see *Commonwealth* v. *Helfant*, 398 Mass. 214, 227 [1986]) but that could be so only if it were first established that the defendant did commit the assault. Because we conclude that the evidence of prior bad acts was not admissible on the question of the identity of the assailant, at retrial it would be unfairly prejudicial to admit the evidence of prior bad acts, not admissible to prove identity, to prove the defendant's intent to rape.

conduct in an independent transaction that was not similar in design or plan to the circumstances of the crime charged. Although this court may have been more willing recently than in prior years to allow evidence of bad acts to be admitted to prove an element of a crime (see, e.g., *Commonwealth* v. *Helfant*, 398 Mass. 214, 226-228 [1986]; *Commonwealth* v. *King*, 387 Mass. 464, 472 [1982]), we have not relaxed our standards where the Commonwealth offers evidence of prior bad acts to prove the identity of the person who committed the crime. We have held that evidence of prior bad acts is not admissible to prove identity unless there is a special mark or distinctiveness in the way the acts were committed (i.e., in the modus operandi). See *Commonwealth* v. *Lacy*, 371 Mass. 363, 366 (1976). See also *Commonwealth* v. *Helfant, supra* at 235 (O'Connor, J., dissenting). Even when the evidence is relevant to prove identity, the trial judge in his discretion must balance its probative value against the potential for undue prejudice. See *Commonwealth* v. *Jackson*, 388 Mass. 98, 103 (1983); *Commonwealth* v. *Burke*, 339 Mass. 521, 534 (1959).[5]

The admission of evidence that the defendant had previously committed the same kind of crime obviously could have an improper influence on the jury's fact-finding function. Thus, it is most important that the Commonwealth demonstrate that the prior events and the circumstances of the crime charged have such similarities as to be meaningfully distinctive. See *Commonwealth* v. *Lacy*, 371 Mass. 363, 366 (1976); *Commonwealth* v. *Madyun*, 17 Mass. App. Ct. 965, 966 (1983).[6] See also *Commonwealth* v. *Helfant*, 398 Mass.

[5]We have recognized this need for balancing in connection with the impeachment of a criminal defendant by records of his conviction of a crime identical to, or substantially similar to, the crime with which he is charged. See *Commonwealth* v. *Elliot*, 393 Mass. 824, 832-834 (1985), and cases cited.

[6]"There were striking similarities in the unconnected crimes and the subject crimes, all of which were committed within a two-week time span, in the same area, and at about the same time of day. Each victim was approached in the same manner, the knife used was the same, the rapes were of a distinctive character, and certain expressions used by the perpe-

214, 235 (1986) (O'Connor, J., dissenting) ("Modus oper-
andi evidence is designed to identify the perpetrator of a
crime proven by other evidence"). There must be a unique-
ness of technique, a distinctiveness, or a particularly distin-
guishing pattern of conduct common to the current and for-
mer incidents to warrant the admission of evidence of prior
bad acts as tending to prove that the defendant was the per-
son who committed the crime charged.[7]

There was no "mark" or unique feature common to the
three assaults described above that would justify admitting
evidence of the prior acts to prove that the defendant was the

---

trator in each instance were substantially the same . . . . The testimony of
the victims of the other crimes was relevant and highly probative on the
question of identification of the defendant in this case." *Id.*

[7]Just as the Commonwealth may show that the defendant committed
another crime in a distinct manner also found in the circumstances of the
crime charged, a defendant may show that someone else had recently com-
mitted such a crime in the same distinct manner. See *Commonwealth* v.
*Harris*, 395 Mass. 296, 300 (1985); *Commonwealth* v. *Keizer*, 377 Mass.
264, 267 (1979); *Commonwealth* v. *Brown*, 27 Mass. App. Ct. 72, 76
(1989). The standards for the admissibility of evidence of other crimes in
these parallel situations have some similarities. See *Commonwealth* v.
*Murphy*, 282 Mass. 593, 598-599 (1933), where the cases are discussed
interchangeably. The cases in each area discuss remoteness in time and
place and the need for a strong similarity of the circumstances of the prior
event and the crime charged. See *Commonwealth* v. *Harris*, *supra*; *Com-
monwealth* v. *Brown*, *supra*; *Commonwealth* v. *Bettencourt*, 20 Mass.
App. Ct. 923, 925-926 (1985). The trial judge has discretion in each in-
stance to decide whether there is such a distinct similarity of conduct that
evidence of the prior acts would be relevant to the issue of identification.
See *Commonwealth* v. *Mayfield*, 398 Mass. 615, 628 (1986); *Common-
wealth* v. *Madyun*, 17 Mass. App. Ct. 965, 966-967 (1983). Of course,
when the Commonwealth offers the evidence, the judge must weigh the
probative value of that evidence against the prejudice to the defendant of
evidence of his prior bad acts, and, if the judge admits the evidence, he
must give proper limiting instructions to the jury. It is because of this mat-
ter of prejudice that it has been said that a defendant need not demon-
strate the same degree of similarity between the events as the Common-
wealth must. See *Commonwealth* v. *Jewett*, 392 Mass. 558, 563 (1984).

If the defendant had offered to show that incidents in 1975 and 1981
like those involved here had been committed by someone else, we doubt
that any judge would have admitted evidence of those incidents as tending
to show that someone other than the defendant committed the crimes with
which he is charged in this case.

person who committed the assault on the victim in this case. The features that are common to the incidents are common to numerous assaults on women: a secluded site; an attempt to drag or force the victim to a more secluded area; words of threat having no unique content, spoken to obtain compliance; and abandonment of the effort because of the assailant's concern over being discovered (an on-coming vehicle, a barking dog, a screaming victim). The differences are substantial: use of a knife in one instance and not in any other; the assailant was naked when one assault commenced; the municipalities, the season, and the time of day in the prior events differed from those in the case on trial; the manner of the assaults had no consistent pattern (for example, only the victim in the case on trial had her head and shoulders slammed against the ground).

The fact is that the circumstances of each incident were characteristic of numerous assaults on women walking or jogging in unpopulated portions of public parks or in similar areas. If we were to uphold the admission of the evidence of prior bad acts in this case, we would be endorsing a rule that evidence of prior assaults by a person is admissible in the trial of every future assault charge against that person, provided that there is a general, although less than unique or distinct, similarity between the incidents. Such a rule would be unfair to defendants and inconsistent with our well-established law on the use of evidence of prior bad acts to prove identity.

The judgment is reversed. The verdict is vacated. The case is remanded for retrial.

*So ordered.*