## COMMONWEALTH *vs.* RICHARD M. ZAGRANSKI.

Hampshire. April 3, 1980. - August 13, 1990.

Present: LIACOS, C.J., WILKINS, LYNCH, O'CONNOR, & GREANEY, JJ.

*Homicide. Search and Seizure,* Probable cause. *Malice. Evidence,* Relevancy and materiality, Other offense, State of mind, Spontaneous utterance, Hearsay, Failure to produce witness, Photograph. *Practice, Criminal,* Instructions to jury. *Error,* Harmless.

In a murder case, the affidavits of the investigating police officer demonstrated probable cause to support the issuance of search warrants authorizing the search of the interior of a motor vehicle rented by the defendant and the search of storage space rented by the defendant. [279-280]

At a murder trial, evidence that the defendant had proposed a scheme to purchase land and to kill the owner without paying him was properly admitted as evidence in the substantially similar circumstances of the murder with which the defendant was charged, for the purposes of showing the identity of the murderer and to establish the element of malice. [280-282] O'CONNOR, with whom LIACOS, C.J., joined, concurring.

At a murder trial, evidence of the victim's statements was incorrectly admitted as reflective of the victim's state of mind, inasmuch as there was no evidence that the defendant was aware of the victim's state of mind, nor were the statements relevant to the defendant's motive; however, where the evidence of the defendant's guilt was overwhelming, the error in admitting the statements, which were cumulative of properly admitted evidence, did not require the defendant be granted a new trial. [282-284]

The inculpating statements of a criminal defendant's wife made to police officers just after they arrested the defendant in his home were correctly admitted in evidence as spontaneous utterances. [284-286]

Discussion of the general principles governing the propriety of comment by counsel or instruction of the jury by the judge on the failure of a party to call a witness in a criminal case. [286-287]

The defendant in a criminal case was not prejudiced by the judge's instructing the jury concerning absent witnesses even though the evidence did not support giving such a charge, where in light of the overwhelming evidence of guilt the error was insignificant. [287-289]

The judge at a murder trial did not abuse his discretion in admitting certain physical evidence (the victim's bloodstained clothing) and three postmortem photographs of the victim's body. [289]


INDICTMENT found and returned in the Superior Court Department on March 2, 1988.

The case was tried before *Raymond R. Cross*, J.

*James M. Smith* for the defendant.

*Judd J. Carhart*, District Attorney (*Ariane D. Vuono*, Assistant District Attorney, with him) for the Commonwealth.

WILKINS, J. The defendant, appealing from his conviction of the murder in the first degree of Michael Molin, challenges several of the trial judge's rulings on the admission of evidence, and further challenges the judge's jury instruction concerning the absence of certain witnesses. There was no reversible error. The defendant refers to G. L. c. 278, § 33E (1988 ed.), but makes no separate argument under it. We have performed our duty under that statute and have determined that there is no reason to disturb the verdict.

The body of the victim, who died of multiple gunshot wounds, was found in a storage space that the defendant had rented. Personal items of the defendant, including his shotgun, were also found there. The defendant and the victim had had dealings concerning the sale to the defendant of land in Granby that the victim and his wife owned. There was evidence that would have warranted a finding that the defendant had shot the victim, placed his body in the trunk of a rented motor vehicle, and thereafter put the body in the rented storage space. We need not recite the evidence in detail, but shall refer to aspects of it that relate to particular issues argued on appeal.

1. The defendant argues that there was no probable cause to support the issuance of a warrant to search the rented motor vehicle. After the search, a chemist found human blood on the floor and sides of the vehicle's trunk.

The defendant also challenges a subsequent search warrant that authorized the search of the rented storage space.

His challenge to the search of the storage space is founded on the theory that the alleged invalidity of the prior search of the motor vehicle tainted the search of the storage area. Because we conclude that the search of the motor vehicle was based on probable cause, we need not consider whether the search of the storage space could be sustained on an independent basis.

Affidavits before the magistrate who authorized the warrant to search the rented motor vehicle stated that a teen-age boy operating on all-terrain vehicle in the woods in Amherst on February 19, 1988, said that he had helped a man with a shotgun load a wounded man into the trunk of an automobile. The man told the boy that he had shot his best friend and needed help to get him into the automobile and to a doctor. The boy identified a picture of the victim as that of the wounded man he had seen in the woods. He also selected a photograph of the defendant from an array as being a photograph of the person who had said that he had shot his friend. We need not recite additional supportive information set out in the thorough affidavits of the experienced State trooper who prepared them.

There was probable cause to believe that the rented vehicle contained evidence that would bear on the victim's death and the defendant's involvement. The probability that blood stains and other physical evidence would be found in the vehicle supported the issuance of the warrant. *Commonwealth v. Upton*, 394 Mass. 363, 370 (1985). In light of all the other information disclosed to the magistrate, the fact that an affidavit shows that the boy misstated the color of the vehicle does not demonstrate that there was no probable cause to search it.

2. The judge acted within his discretion in admitting, for limited purposes, evidence tending to show that, approximately six weeks before the shooting of the victim, the defendant had told his friend Neal Dodd that he intended to entice an owner of a hotel in Jamaica to come to this country and sell his hotel to the defendant, after which the defendant would kill him. The defendant rightly concedes that the cir-

cumstances of the attempted purchase of the victim's land and the victim's subsequent death were substantially similar to the defendant's proposed dealings with the Jamaican hotel owner.[1] The judge charged the jury that the evidence of the defendant's Jamaican hotel scheme was admitted only to show "such things as knowledge, intent, motive, method, pattern of conduct, and the like."[2]

The evidence of a common scheme or pattern of conduct was sufficiently related to the circumstances of the victim's death, in time and otherwise, to be admissible, in the judge's discretion, not to prove that the defendant was a bad person, but to prove that the defendant acted pursuant to a scheme or pattern of conduct he had recently proposed and had pursued in part. See *Commonwealth* v. *King*, 387 Mass. 464, 469 (1982); *id.* at 477 (O'Connor, J., dissenting). That proposed pattern of conduct was admissible because it tended to identify the defendant as the person who killed the victim. *Commonwealth* v. *Brusgulis*, 406 Mass. 501, 505-506 (1990). If there was evidence sufficient to establish the defendant's identity, the defendant's earlier scheme would also be relevant on the issue of the defendant's malice. *Id.* at 504 n.4. *Commonwealth* v. *Helfant*, 398 Mass. 214, 227 (1986). This evidence was particularly relevant on the issue of malice

---

[1]Dodd testified that in the first week in January, 1988, the defendant told him "he was going to try and get a hotel, and he was going to send a letter to the owner of a hotel in Jamaica, and he was going to invite the man down to talk business and get the hotel, and then, after he had gotten the hotel signed over to him, he was going to shoot the man, then dispose of the body." The defendant had shown Dodd a letter that he had written to a Jamaican hotel owner. A copy of such a letter and several tour brochures, found in the defendant's house, were introduced in evidence.

Dodd also testified that the defendant had called him on February 9 and had told him that he had been introduced to a man who wanted to sell one hundred acres of land and that he planned to kill the man and bury the body after the title passed. The following week the defendant showed Dodd the land and discussed his plan again. Dodd told the defendant he did not want to be involved and advised him to call it off. On the evening of the victim's death, the defendant called Dodd and said, "It's done."

[2]The defendant objected to the admission of the evidence and generally to the judge's instruction concerning that evidence. He did not object to specific portions of this charge.

because there was testimony that the defendant had told the boy in the Amherst woods that he had shot the victim by accident. There was other testimony that the defendant had told another friend that he had shot the victim in self-defense.

3. Over objection, the judge permitted certain witnesses to testify concerning statements the victim had made to them. On February 19, 1988, the day of his death, the victim told a creditor that he would pay his debt later that day or on the next day. A friend of the victim testified about conversations with the victim prior to February 19, concerning the sale of the victim's land. The victim told his friend of the interest of a particular company in putting a building on the land and the defendant's statement to the victim that the man who was mayor of Holyoke at the time of the trial was a backer of the project.

The attorney who acted for the victim in connection with the proposed sale of the victim's land to the defendant testified concerning conversations he had had with the victim not in the presence of the defendant. The victim told his attorney that the defendant wanted to pay him in cash and that one of the backers of the project did not want the attorney involved in the transaction. Two days later, and four days before his death, the victim told the attorney that he had learned that one of the investors was a prominent local businessman, and that the victim was probably going to make the sale. He asked his attorney to prepare a deed, leaving blank the grantees' names and the amount of the consideration. The attorney also testified that the victim told him two days before his death that the defendant had requested that the mortgage be paid off before the sale of the land. On February 19, the victim told the attorney that there were no problems and agreed that he would only close the transaction at a bank.

All this testimony concerning what the victim had said to various witnesses, not in the defendant's presence, was hearsay. The Commonwealth seeks to justify its admission under the state-of-mind exception to the hearsay rule. This exception admits relevant evidence of the victim's state of mind of

which the defendant was aware. See *Commonwealth v. Lowe*, 391 Mass. 97, 105 (1984); *Commonwealth v. Borodine*, 371 Mass. 1, 8-9 (1976), cert. denied, 429 U.S. 1049 (1977). Such a statement is not admissible in evidence unless the trier of fact is warranted in finding that the defendant had been aware of the victim's state of mind. *Commonwealth v. Olszewski*, 401 Mass. 749, 759 (1988). *Commonwealth v. Borodine, supra.* Such a statement is not admissible to prove the facts stated, but only the declarant's state of mind. See *Commonwealth v. Van Liew*, 14 Mass. App. Ct. 662, 667 (1982). In certain instances, a voir dire hearing concerning the admissibility of the proffered state-of-mind evidence would aid the judge. Preferably, the judge should tell the jury of the limited purpose for which such evidence is admitted, at the time it is admitted.

None of the victim's statements was admissible under the state-of-mind exception. Only a few of the victim's statements concerned his state of mind, such as his intentions as to future conduct. All the remaining statements, which concerned past events, were, therefore, inadmissible under the state-of-mind exception. See *Commonwealth v. Lowe*, 391 Mass. 97 (1984). Although the Commonwealth argues that the jury could infer that the victim's state of mind was communicated to the defendant, it fails to indicate what evidence would support such an inference. Moreover, even if the defendant had known of the victim's state of mind, as reflected in the testimony we have summarized, it would have had no relevant bearing on the defendant's motive.

The question thus becomes whether there must be a retrial because, in a case having overwhelming evidence of the defendant's guilt, the prosecution unnecessarily overreached and the judge did not prevent the error. The defendant does not argue to us that he was prejudiced by the admission of this evidence.[3] An argument that the defendant was

---

[3]The judge told the jury that, only if the victim's state of mind was communicated to the defendant could they "consider [state-of-mind] evidence to be probative of the defendant's motive." Because there was no evidence of any such communication, the jury should have disregarded any

prejudiced by the error could, however, be developed. This alleged "state of mind" evidence, with other evidence (such as the mayor of Holyoke's testimony that he did not know the defendant), tended to show that the defendant misrepresented certain facts to the victim, that the defendant was acting unconventionally in seeking to close the transaction, and that the defendant never had any intention of paying the victim for a deed to the land.

In certain circumstances, the erroneous admission of such evidence might well require a retrial. Here, however, there was sufficient other evidence of the defendant's fraudulent and unusual behavior in dealing with the victim that the erroneously admitted evidence was only cumulative of that other evidence. See *Commonwealth* v. *Lowe, supra* at 106. Moreover, the evidence of the defendant's guilt was so overwhelming that the error did not prejudice his case. The error in admitting the victim's hearsay statements, therefore, was not reversible error.

4. The judge acted within his discretion in admitting statements that the defendant's wife made just after State police officers arrested the defendant in their home on the morning of February 22, 1988. The judge ruled, over the defendant's objection, that the wife's hearsay statements were admissible as spontaneous utterances, citing *Commonwealth* v. *McLaughlin*, 364 Mass. 212, 223 (1973).

Immediately after the defendant admitted the officers to the kitchen through the back door, they handcuffed him and advised him of his rights. His wife then entered the kitchen and, very excitedly, asked what was going on. A State police sergeant answered that her husband was under arrest for murder. She then yelled, "Murder? Where is the body?

---

state-of-mind evidence, and one could conclude consequently that the defendant was not prejudiced by the admission of the victim's statements. We question, however, whether the jury knew what the judge meant by state-of-mind evidence. Furthermore, because the judge gave the instruction as he did, the jury would have been warranted in concluding that the judge thought that there was evidence that, if believed, tended to show that the victim's state of mind had been communicated to the defendant.

Show me the body. Where is the body if there's a murder?" Another arresting officer testified that the defendant's wife, very agitated, shouted "Where's the body? Where's the body? I challenge you to tell me where the body is."[4]

For the purpose of the spontaneous utterance exception to the hearsay rule, an utterance is spontaneous if it is made under the influence of an exciting event and before the declarant has had time to contrive or fabricate the remark, and thus it has sufficient indicia of reliability. See *Commonwealth* v. *Fuller*, 399 Mass. 678, 682-683 (1987); *Commonwealth* v. *Puleio*, 394 Mass. 101, 104-105 (1985). The general rule is that the spontaneous utterance must also tend to qualify, characterize, and explain the underlying event. See *Commonwealth* v. *Fuller*, *supra* at 682. We recognize broad discretion in the trial judge in any review of the question whether an utterance met the test of admissibility. See *id.*; *Commonwealth* v. *McLaughlin*, *supra*.

The judge was more than warranted in deciding that the utterance was spontaneous. The declarant had just been told in the kitchen of her home that her husband was under arrest for murder. There is a strong basis for concluding that her sudden reaction was reliable and not contrived. At this time, the police had not discovered the victim's body in the storage area. A reasonable inference from her remarks is that the defendant had admitted to his wife that he had killed the victim and had hidden the body. The evidence was relevant, and the defendant does not argue otherwise.

As we have said, the spontaneous utterance exception to the hearsay rule has a further component. Our cases have not discussed this aspect of the rule in detail. The spontaneous utterance must qualify, characterize, and explain the underlying event that prompted the excited utterance. See *Commonwealth* v. *Fuller*, *supra* at 682; *Commonwealth* v.

---

[4]We add that, as the defendant was led away, he was told of the charge and said, "I guess this means Michael showed up dead." The police had not mentioned the name Michael Molin to the defendant.

*Bowie*, 25 Mass. Ct. 70, 79-80 (1987); *Blake* v. *Springfield St. Ry.*, 6 Mass. App. Ct. 553, 556 (1978).

At trial and before us, the defendant has argued that the murder was the underlying event and that the wife's statements did not qualify, characterize, or explain the murder. We reject the premise of the defendant's argument. The underlying event was not the murder. It was the declarant's discovery of her handcuffed husband under arrest for murder in the kitchen of her home. The excitement of that underlying event produced her spontaneous exclamations. The remarks of the defendant's wife tended to characterize and explain her perception of the arrest. In her view, the arrest was unwarranted because she believed the police had not discovered the victim's body.

5. The judge instructed the jury, at the Commonwealth's request and over the defendant's objection, concerning the possibility that they might properly draw an inference from the failure of the defendant to call certain persons as witnesses. The judge described the conditions under which a jury properly could infer that, if they had testified, absent persons would have given testimony unfavorable to a party. No such conditions existed in this case, and thus the charge was given in error.

There was evidence that the defendant at various times had referred to investors from Canada who were financing his purchase of the victim's land. In one statement, the defendant said that he shot the victim because the victim had shot one of the Canadian investors. The Commonwealth argued to the jury that these alleged Canadian investors never existed.

The general principles governing the propriety of a comment by counsel, or an instruction by a judge, on the failure of a party to call a witness are discussed in *Commonwealth* v. *Cobb*, 397 Mass. 105, 108-109 (1986); *Commonwealth* v. *Franklin*, 366 Mass. 284, 292-294 (1974); *Grady* v. *Collins Transp. Co., Inc.*, 341 Mass. 502, 504-506 (1960); *Commonwealth* v. *Domanski*, 332 Mass. 66, 69-71 (1954); and *Commonwealth* v. *Schatvet*, 23 Mass. App. Ct. 130, 134 (1986).

Justice Kaplan stated the general rule succinctly when he wrote in *Commonwealth v. Schatvet, supra*: "Where a party has knowledge of a person who can be located and brought forward, who is friendly to, or at least not hostilely disposed toward, the party, and who can be expected to give testimony of distinct importance to the case, the party would naturally offer that person as a witness. If, then, without reasonable explanation, he does not do so, the jury may, if they think reasonable in the circumstances, infer that that person, had he been called, would have given testimony unfavorable to the party." *Id.*

This is a delicate area, requiring caution. A jury may unfairly be led to draw improper conclusions from the failure of a defendant to call a witness. See *Commonwealth v. Franklin, supra* at 294; *Commonwealth v. Domanski, supra* at 70-71, citing *Commonwealth v. Finnerty*, 148 Mass. 162, 167 (1889); *Commonwealth v. Schatvet, supra* at 134-135. The *Schatvet* opinion suggests that drawing an inference might come close, in certain circumstances, to invading a defendant's constitutional rights. *Id.* at 135 & n.10.

The judge instructed the jury that they could properly draw an inference against the defendant from his failure to call a witness if (1) the Commonwealth's case is strong, (2) the absent witness would be expected to aid the defendant, (3) the absent witness was available to testify for the defendant, and (4) the witness's absence was not explained in the circumstances of the case. The crucial question here, as in many other cases involving this issue, is whether the evidence would have permitted a finding that there was a person that the defendant did not call as a witness as to whom the inference might be appropriate.

The absence from the record of any demonstration that a potential witness was available to testify has led to reversals of convictions when an absent witness argument was made to the jury or such a jury instruction was given. See *Commonwealth v. Cobb, supra* at 109; *Commonwealth v. Domanski, supra* at 71; *Commonwealth v. Schatvet, supra*. Cf. *Commonwealth v. Vasquez*, 27 Mass. App. Ct. 655, 659 (1989)

(Evidence did not warrant an argument that an adverse inference be drawn against the Commonwealth from its failure to call a witness).

The instruction concerning absent witnesses should not have been given because the evidence did not provide the necessary foundation for it. On February 19, 1988, the defendant told a State trooper that he had at his home the addresses and telephone numbers of the two Canadian investors whom he named. Police attempts that day to locate the Canadians were unsuccessful. A search of the entire residence on February 22 uncovered no addresses or telephone numbers of Canadian investors. There is nothing on the record to show that these potential witnesses were available to be summoned by the defendant during his February, 1989, trial.

By giving the instruction, the judge implicitly suggested that there was evidence that would warrant a finding that the potential witnesses were available to the defendant. He did, however, tell the jury to draw no inference against the defendant from the failure to call a witness unless they should find that the witness was available. If the jury followed the judge's instruction, and disregarded the implication, inherent in the very giving of that instruction, that there was evidence of availability, the jury drew no inference against the defendant. In the absence, however, of evidence supporting the giving of an absent witness charge, no such charge should be given. See *Commonwealth* v. *Vasquez, supra* at 658.

The giving of the instruction does not require reversal of the conviction. We can confidently say that, in light of the overwhelming evidence against the defendant, he was not prejudiced by this error. The evidence against the defendant was so overwhelming that the error is insignificant. There was evidence that the defendant planned the murder to acquire the victim's land at no cost; there were negotiations concerning the land sale between the defendant and the victim; the defendant obtained from the victim an executed deed to the land conveying the property to him and then the victim disappeared; the defendant was seen in woods in Am-

herst standing over the victim's bloody body, holding a shotgun; the body was found in a storage space that the defendant had recently rented, along with the defendant's shotgun (with the defendant's fingerprint on it) and other property of the defendant; the defendant admitted to one friend that he had committed the murder; he sought from another friend assistance in getting rid of the body and the gun, and, finally, following his arrest and after being advised of his rights, he made an admission ("I guess this means Michael showed up dead").

In light of all this evidence, much of it from disinterested citizens or friends of the defendant, the likelihood that the judge's error in giving an absent witness instruction had a prejudicial impact on the jury is less than miniscule.

6. The judge did not abuse his discretion in admitting physical evidence, including some of the victim's blood-stained clothing and three post-mortem photographs of his body. The clothing was only marginally relevant because it is obvious that a person shot as the victim was would have blood stains on his clothing. Cf. *Commonwealth* v. *Repoza*, 382 Mass. 119, 129 (1980) (photograph). Admission of that physical evidence was not unfairly prejudicial.

The defendant concedes that two of the three photographs he challenged could have aided the jury's understanding of the pathologist's testimony. See *Commonwealth* v. *Nadworny*, 396 Mass. 342, 367 (1985), cert. denied, 477 U.S. 904 (1986). The third photograph, showing the victim's frontal wound, added nothing to the Commonwealth's case, which was not based on a claim of extreme atrocity or cruelty. It too was only marginally relevant, but, as such photographs go, it was not so gruesome or so likely to have an inflammatory effect on the jury that its admission was an abuse of discretion. See *Commonwealth* v. *Ramos*, 406 Mass. 397, 406-407 (1990).

*Judgment affirmed.*

O'CONNOR, J. (concurring, with whom Liacos, C.J., joins). "Fairness to a defendant in a criminal case requires the rule that the commission by him of an independent crime cannot ordinarily be shown as evidence tending to show the commission of the crime charged. (Citations omitted.) It does not follow that, because the defendant committed a similar offence on another occasion, he committed the crime for which he is being tried. And there is the danger that, because a defendant appears to be a bad man capable of, and likely to commit, such a crime as that charged, a jury might be led to dispense with proof beyond a reasonable doubt that he did actually commit the crime charged. Moreover, it is not fair that a defendant in the course of a trial should be called upon to defend himself against accusations not set forth in the indictment." *Commonwealth* v. *Stone*, 321 Mass. 471, 473 (1947). From the beginning, the rule expressed in *Stone*, *supra*, was subject to two exceptions. One exception allowed the introduction of evidence of a defendant's unique modus operandi to identify him as the perpetrator of a crime shown to have been committed by someone in that extraordinary way. The other exception permitted the introduction of evidence that the conduct attributed to the defendant was part and parcel of an ongoing criminal scheme, which scheme explained the conduct and demonstrated the intent with which the defendant engaged in it.

The first exception, in my view, does not apply to this case. There was nothing unique about the method, shooting, by which the victim was killed, nor was there evidence concerning the method by which the defendant may have intended to kill the Jamaican hotel owner. The court, however, also relies on the second, "common scheme," exception to conclude that evidence of the defendant's earlier expressed intention to commit a substantially similar, but nevertheless totally independent, crime against a different victim was properly admitted to show the defendant's malice. The evidence of the defendant's earlier state of mind may have been at least marginally probative of the defendant's later intention, but the two independent events were not segments of a larger

ongoing scheme. Indeed, to the extent that the evidence concerning the defendant's earlier statement that he intended to lure the hotel owner to this country so he could buy his hotel and then kill him said anything about the defendant's intention toward the victim, it did so only by portraying the defendant as the kind of a man who would be apt to possess the mentality required for the homicide with which he was charged. That is precisely what the original other crime evidence rule prevented for the reasons expressed in *Commonwealth* v. *Stone, supra,* and set forth at the outset of this opinion.

I recognize that today's decision with respect to the admissibility of other crime evidence is consistent with the court's decisions in *Commonwealth* v. *Helfant*, 398 Mass. 214, 224-229 (1986), and *Commonwealth* v. *King*, 387 Mass. 464, 469-473 (1982), cases in which I dissented and which I continue to think were wrongly decided. For that reason, and also because the admissible evidence of guilt in this case was overwhelming, I concur in the court's decision. However, I write separately to repeat my opposition to the court's virtual abandonment of a sound rule grounded in fairness. I write with the hope that one day the court will reverse the "sharp retrogression in its sensitivity to the unfairness of admitting in a criminal case evidence of a defendant's prior bad acts," see *Commonwealth* v. *Helfant, supra* at 238 (O'Connor, J., dissenting), except in the rare circumstances accommodated in our pre-*Helfant* and *King* cases.