At trial, the victim testified that in 1982, when she was six years of age, she stayed overnight at the defendant’s house in Cheshire because she was visiting her cousin, the defendant’s daughter. That night, the victim slept alone on a couch in the living room. At some point that evening, the victim said that she heard the front door open and shut but did not see anyone. She said that “Bob Kelleher came and sat down at the end of the couch.” She said she “figured it was him” because “[i]t was a man,” with the weight of a man, her aunt was sleeping, and “afterwards from the events that happened I knew it was a man.” She also said that she kept her eyes closed and did not see her assailant’s face or hear his voice. The victim stated that her assailant removed her underwear, forced her legs apart, and placed his “big” and “rough” hand and then his tongue inside her vagina.
The victim found her underwear on the bathroom floor the next morning but she did not tell anyone about what had happened. Approximately a year later, however, she did tell her mother that she had dreamed that the defendant “was touching me wrong.”
In 1983, the victim visited her cousin at the defendant’s new house in Northampton. Again, she spent the night alone on a couch in the living room. She said the defendant woke her up again and sexually assaulted her. She said she recognized him by his voice and the feel of his hands, and because he was the only man in the house. After approximately ten years of silence about these incidents, the victim told her mother about them after hearing a lecture about sexual abuse at school.
The judge instructed the jury that the Northampton incident was not before the court and that that evidence was only for the purpose of showing whether the defendant had any passion or emotion for the victim. At sidebar on the Commonwealth’s request to allow the Northampton incident also for the purpose of identifying the defendant as the perpetrator of the Cheshire rape, the judge considered lifting the restriction but did not.
At the close of all the evidence, the defendant moved for a required finding of not guilty because the victim had not identified the defendant as the *828 perpetrator of the criminal acts in Cheshire. The judge said that in the absence of the Northampton incident “there’s no doubt in my mind there would be a required finding . . . [as] the only evidence of identification comes from Northampton. As I say, my problem with that is . . . it’s not in for purposes of identification.” The judge invited the Commonwealth to reopen the issue, but the Commonwealth declined to do so. The judge then denied the defendant’s motion, but he granted the defendant’s renewed motion after the jury returned verdicts of guilty on both indictments.
The judge erred in granting the defendant’s motion for a required finding of not guilty after the jury’s verdict because: (1) there was sufficient instruction by the judge to allow the jury to consider evidence of the Northampton incident as evidence of the defendant’s identity as the perpetrator of the Cheshire assault; and (2) the evidence was sufficient to support the jury’s finding that the defendant was the perpetrator. See Commonwealth v. Lati-more, 378 Mass. 671, 677 (1979) (when deciding a Mass.R.Crim.P. 25, 378 Mass. 896 [1979], motion for a finding of not guilty, the judge decides “whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt” [emphasis original]); Commonwealth v. Doucette, 408 Mass. 454, 456 (1990) (same standard applies to postverdict motion). We agree with the Commonwealth’s contention that the motion should not have been granted, regardless of the fact that the judge did not specifically admit the evidence of the Northampton incident for the purpose of identification and the fact that the Commonwealth chose not to reopen the case on that issue. See Commonwealth v. Zagranski, 408 Mass. 278 (1990).
This case is similar to Commonwealth v. Zagranski, supra. There, the jury were allowed to use evidence to determine identity when they were instructed to use it to decide whether there was “knowledge, intent, motive, method, pattern of conduct, and the like.” Id. at 281. The court held that the pattern of conduct evidence was admissible precisely because “it tended to identify the defendant as the person who killed the victim.” Ibid. See Commonwealth v. Brusgulis, 406 Mass. 501, 505-506 (1990).
Likewise, in this case, the judge’s instruction enabled the jury to consider the passion or emotion evidence for identity purposes. The judge instructed the jury:
“[T]he only thing that you can consider any allegations of an incident in Northampton for is to see if the defendant had any feelings of passion or emotion for the victim and, if he did, if those feelings were present in 1982 [the year of the alleged Cheshire incident] and, if they were, if they have any tendency to show that the 1982 incident actually did occur and that the defendant was the alleged perpetrator” (emphasis supplied).
Although the judge during the trial indicated to counsel that he had specifically limited the use of the Northampton incident for the purpose of showing whether the defendant had any feelings of passion or emotion for the victim, the language he used in his instruction (quoted above) properly allowed the jury to consider the incident for purposes of identification because he indicated that the passion or emotion evidence could tend to *829 show that the defendant was the perpetrator in the Cheshire assault. Commonwealth v. Bemis, 242 Mass. 582, 585 (1922). Commonwealth v. Mac-hado, 339 Mass. 713, 715 (1959). Commonwealth v. Calcagno, 31 Mass. App. Ct. 25, 26-27 (1991). See Commonwealth v. Zagranski, supra at 281. We conclude, therefore, that the evidence of the defendant’s passion or emotion for the victim was admissible because it “tended to identify the defendant as the person who [raped] the victim.” Commonwealth v. Zagran-ski, supra at 281.
Joseph A. Pieropan, Assistant District Attorney, for the Commonwealth.
Robert J. Carnes for the defendant.
We further conclude that the evidence was sufficient to support the jury’s conclusion that the defendant was the perpetrator of the Cheshire assault. See Commonwealth v. Francis, 391 Mass. 369, 375 (1984) (the “job [of appellate courts] is not to sit as a second jury passing anew on the defendant’s guilt”). The victim identified the defendant as the perpetrator of the Northampton incident and also testified that the perpetrator’s hands in the Cheshire incident felt the same as the defendant’s hands in the Northampton incident.
The order allowing the defendant’s motion for a required finding of not guilty is vacated, the jury’s verdicts are reinstated, and the case is remanded to the Superior Court for sentencing.

So ordered.