NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-781

COMMONWEALTH

vs.

SONN KE.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Following a jury trial in the Superior Court, the defendant was convicted of aggravated rape of a child (by more than a ten-year age difference) and forcible rape of a child.[1]  On appeal, the defendant argues that the judge erred in admitting evidence of prior uncharged sexual assaults by the defendant against the victim.  Discerning no abuse of discretion or other error of law, we affirm.

Background.  The jury could have found the following facts based on the evidence presented at trial.  Prior to moving to Massachusetts, the victim lived in California with her mother,

_____

[1] The defendant was acquitted of three counts of indecent assault and battery on a child.

siblings, and the defendant, her stepfather.  The defendant began sexually assaulting the victim when she was in the third or fourth grade.  The family moved to Massachusetts when the victim was in the seventh or eighth grade.  The defendant continued his sexual assaults on the victim.  The victim began devising a plan to run away.

During her freshman year of high school, when she was fifteen years old, the victim took an opportunity she had while outside of her house to call her older stepbrother; he was in the military and stationed abroad.  She told him what the defendant had been doing to her.  Although she had hoped to run away from home that day before her mother came back from work, the victim's plans were dashed when she was caught.  Back at home, the victim's mother asked why she was so upset.  The victim told her mother what the defendant had been doing to her. The victim's mother confronted the defendant, who denied it. After the confrontation, the defendant did not sexually assault the victim again, but he continued to live with the family.

The year the victim graduated from high school she moved back to California.  The victim's older stepbrother then reported the defendant's crimes against the victim to the police.

Discussion.  The Commonwealth filed a motion in limine to admit evidence of the defendant's sexual assaults against the

2

victim which took place in California.  The defendant filed a motion in limine to exclude these prior acts of sexual assault. The judge allowed evidence of prior sexual assaults in California to be admitted for the purpose of establishing the nature of the defendant's relationship with the victim, a pattern or course of conduct, state of mind, intent, method, or a modus operandi.  The judge limited this evidence to prior conduct that is the same as the charged conduct only.[2]

On appeal, the defendant contends that evidence of the California sexual assaults on the victim was so pervasive that it tainted the evidence regarding the charged sexual assaults. He points in particular to a jury question regarding the California sexual assaults as supporting the view that the jury used the prior bad act evidence in an improper and prejudicial manner.  A judge's ruling on the admission of prior bad act evidence is reviewed for an abuse of discretion.  See Commonwealth v. Nascimento-Depina, 496 Mass. 1, 8 (2025).

Prior bad act evidence is inadmissible for the purpose of demonstrating a defendant's bad character or propensity to commit the charged crime.  See Commonwealth v. Crayton, 470 Mass. 228, 249 (2014); Mass. G. Evid. § 404(b)(1) (2025).  It is

---

[2] The judge ruled that any evidence of the defendant's prior bad acts relating to the victim's younger stepsister was excluded.

3

admissible when it is relevant to establish the defendant's "motive, opportunity, intent, preparation, plan, knowledge, identity, or pattern of operation." Crayton, 470 Mass. at 249, quoting Commonwealth v. Walker, 460 Mass. 590, 613 (2011); see Mass. G. Evid. § 404(b)(2) (2025). It is also admissible to establish a common course of conduct or the nature of the relationship between the victim and the defendant. See Commonwealth v. Barrett, 418 Mass. 788, 793-794 (1994). See also Nascimento-Depina, 496 Mass. at 8 (where defendant charged with sexual assault, some evidence of similar uncharged conduct may be admissible to give jury view of entire relationship between defendant and victim). Because prior bad act evidence has an inherent risk of prejudice, however, it should only be admitted if its probative value is outweighed by the risk of unfair prejudice to the defendant. See Commonwealth v. Baker, 440 Mass. 519, 530 (2003); Mass. G. Evid. § 404(b)(2).

Here, the prior bad act evidence was probative. The California sexual assaults involved the same child victim, took place in the same setting (the family home), and occurred close in time to the charged conduct. Cf. Commonwealth v. Brusgulis, 406 Mass. 501, 504-505 (1990) (evidence that defendant committed similar crimes against different victims generally inadmissible). It shed light on the relationship between the defendant and the victim and provided context for the charged

4

assaults in Massachusetts, a course of conduct which began in California.  See Barrett, 418 Mass. at 793-794 (evidence of similar misconduct as charged crime admissible to show nature of relationship between defendant and victim).  See also Commonwealth v. Childs, 94 Mass. App. Ct. 67, 71-72 (2018) (prior bad act evidence of uncharged conduct against same victim probative of continuing course of conduct, and testimony of victim would "make little sense" without context of continuous sexual abuse).

At the same time, the risk of prejudice was slight given the prosecutor's limited inquiry into the subject.[3]  Moreover, the prosecutor referred to the evidence only briefly in closing to portray a pattern of escalating conduct and even paused to remind the jury of the purpose of the California sexual assault evidence.  Contrast  Commonwealth v. Dwyer, 448 Mass. 122, 128 (2006) (jury were provided with detailed evidence of seven uncharged acts of sexual abuse by defendant, and more time was spent on both direct and cross-examination exploring those prior bad acts than crimes charged).

---

[3] The victim testified that the sexual abuse began with the defendant touching her butt repeatedly until it became "normalized."  She went on to say that the defendant would place her hand on his penis, so that she could feel the marble-like objects he had inserted along the shaft, under the skin.  She described the first time he had raped her.  The remainder of her testimony related to the sexual assaults in Massachusetts.

Moreover, the judge gave limiting instructions immediately after the victim's testimony concerning the California sexual assaults, again after a jury question, and yet again in the final charge to the jury. See Commonwealth v. Bryant, 482 Mass. 731, 735 (2019) (effectiveness of limiting instructions should be considered in balancing probative value versus unfair prejudice). The judge reminded the jury on three separate occasions that it would be "extremely unfair" to use the sexual assaults in California as evidence of the defendant's bad character or his propensity to commit the crimes charged. See Commonwealth v. Almeida, 479 Mass. 562, 569 (2018) (limiting instruction to jury both when prior bad act evidence was introduced and in final charge minimized prejudicial effect from admission).

Nor does the jury question concerning the California sexual assaults signal that the jury misused the California evidence. During the victim's testimony, a juror handed up a note that stated the following: "please clarify status of any charges brought against defendant in the State of California." Rather than signify confusion as to the charges, the note tended to show that the juror understood that the California sexual assaults were not part of the Massachusetts case under consideration by the jury. Moreover, the jury acquitted the defendant on three charges, demonstrating that it was not

6

overwhelmed by the evidence of the prior sexual assaults in California, nor that it was using that evidence to consider the defendant's propensity to commit the charged crimes.  See Commonwealth v. Butler, 445 Mass. 568, 576 (2005) (jury acquitting defendant on serious assault and battery charge shows it listened to judge's instructions on not using prior bad act evidence as propensity to commit charged crime).  See also Commonwealth v. Linenkemper, 104 Mass. App. Ct. 467, 473 n.9 (2024) (jury acquitting defendant of certain charges demonstrated it was not "unduly swayed" by admission of prior bad act evidence).  The jury acquittal on three of five charges shows that it carefully considered each charge and that it was not so overwhelmed by the prior bad act evidence to dispense with proof beyond a reasonable doubt and convict the defendant across the board.  Id.  Contrast Commonwealth v. Stone, 321 Mass. 471, 473 (1947) (risk that jury will dispense with burden of proof and use prior bad act evidence as propensity for defendant to commit charged crime).  Under the circumstances, the judge was well within her discretion in determining that the

7

California sexual assaults were more probative than prejudicial and properly admitted the evidence at trial.

                                        Judgments affirmed.

                                        By the Court (Singh,
                                          D'Angelo & Hodgens, JJ.[4]),

                                        *Paul Little*

                                        Clerk

Entered: August 14, 2025.

---

[4] The panelists are listed in order of seniority.