COMMONWEALTH *vs.* EDWARD EMENCE.

No. 97-P-1154.

Suffolk. March 15, 1999. - July 15, 1999.

Present: ARMSTRONG, GREENBERG, & LAURENCE, JJ.

*Constitutional Law,* Right to obtain evidence. *Evidence,* Relevancy and
materiality, Credibility of witness, Prior misconduct.

At the trial of indictments, the judge erred in excluding evidence proffered by
the defendant on direct examination of a defense witness, relevant to the
credibility of that witness, and erred again in excluding the same evidence
proffered on redirect to rehabilitate the witness after cross-examination.
[301-304]
Where the prejudicial effect of evidence of a criminal defendant's conduct in
pouring a hot liquid on another, subsequent to the similar crime with
which he was charged, outweighed its probative value, the admission of
the evidence for the jury's consideration was improper; where it was likely
that the jury's verdicts were affected by the evidence, a new trial was
required. [304-305]

INDICTMENTS found and returned in the Superior Court Department on November 21, 1995.

The cases were tried before *Elizabeth B. Donovan,* J.

*Eric S. Brandt,* Committee for Public Counsel Services, for the defendant.

*Christopher Pohl,* Assistant District Attorney, for the Commonwealth.

GREENBERG, J. Edward Emence was indicted on two counts of rape, home invasion, kidnapping, mayhem, five counts of assault by means of a dangerous weapon, armed robbery, threats, unlawful possession of a firearm and ammunition, and assault and battery. At a trial, a Suffolk County jury found him guilty of threats, kidnapping, mayhem, assault and battery, and three counts of assault and battery by means of a dangerous weapon, one by means of scalding coffee, and the other with a chain. A motion for a required finding of not guilty was allowed as to the home invasion charge. The jury were deadlocked on the two indictments

charging him with rape (the judge declared a mistrial). On the remaining charges, the jury returned verdicts of not guilty. The defendant appeals from the judgments of conviction.[1]

At trial, the complainant testified as follows. At about 6 A.M. on October 26, 1995, she walked to the apartment of an acquaintance to meet with the acquaintance before she went off to work. As the complainant entered the foyer of the building, two men, one masked and brandishing a chain, descended upon her and forced her into the acquaintance's apartment. During the fifteen to twenty minutes during which the crimes took place, the attackers brutalized the complainant. She was restrained by a chain and forced, at gunpoint, to swallow coffee that contained a "white powder" substance; one of the assailants poured scalding hot coffee on her breast. She was raped by both men. After the second one assaulted her, she was able to struggle free and escape. As she lived only minutes away, she covered herself and ran home. She was home, she said, by 6:45 A.M.

Anastasio Ramirez, who had worked as a mechanic and clerk at a Richdale convenience store and gas station at the time the assaults upon the complainant took place, was called as a witness by the defense. He testified that he recognized the complainant as the driver of a disabled vehicle (a tire was damaged) who sought his assistance at about 5 A.M. on October 26, 1995. She had arrived with a man, whom Ramirez testified was the defendant. As he was alone in the store, it took him several hours after his regular shift to repair her vehicle. According to Ramirez, she remained inside the store for the entire time until about 10 A.M. that morning.

An investigator hired by the defendant had located Ramirez not too long before the trial and, after an interview, determined that he could place the complainant inside the station within the time frame of the alleged attack. Anticipating that the prosecutor might cast doubt on Ramirez's ability to remember events long past, defense counsel, over objection, put the following question, "When you were working at the store, was it often that you would stay four hours after your shift?" That drew an objection. At a side bar conference, defense counsel explained to the judge and prosecutor that the purpose of the question was to suggest that the witness would have particular reason to

---

[1] The convictions of threats and assault and battery were placed on file with the defendant's consent.

recall the event because it was "out of the ordinary." The question in this case was certainly a critical one. The government was aware (it had been informed by defense counsel of this potential exculpatory testimony) that Ramirez was, in fact, working on a vehicle driven to the station by the complainant at the exact time she claimed to have been robbed. So there was justification for defense counsel to shore up the credibility of a critical witness. *Commonwealth* v. *Sugrue*, 34 Mass. App. Ct. 172, 176 (1993). Up to that point, proof of the defendant's involvement in the alleged attack had not been rebutted. The judge, however, sustained the objection.

On cross-examination, the prosecutor suggested that Ramirez did not, in fact, recall seeing the complainant as claimed, and that his testimony was fabricated to help the defendant. The prosecutor, on two separate occasions, insinuated (without laying a proper evidentiary foundation) that Ramirez was a friend of the defendant. "You're telling us today that you don't know this man, the defendant?" In addition, the prosecutor succeeded in eliciting testimony from Ramirez that "a lot of people came into the store," that it was "open twenty-four hours," and that he had "seen a lot of people come and go."

On redirect examination, defense counsel again attempted to have Ramirez explain why this event was particularly memorable, but the prosecutor repeated the same objection. And upon objection, the judge excluded it once again.

1. *Exclusion of evidence that bolstered defense witness's testimony.* A defendant in a criminal case has a constitutional right to present evidence, *Commonwealth* v. *Francis*, 375 Mass. 211, 213-214 (1978), cert. denied, 439 U.S. 872 (1979), and that right extends to proof of facts to make a witness's testimony credible. See, e.g., *Commonwealth* v. *Galvin*, 310 Mass. 733, 747 (1942); *Commonwealth* v. *DeBrosky*, 363 Mass. 718, 725 (1973). Since this sort of evidence may be admitted as a matter of discretion, the question of relevancy comes into play. "In determining whether the evidence offered serves any valid purpose we apply the rule that it must merely render the desired inference [of credibility] more probable than it would be without the evidence." *Green* v. *Richmond*, 369 Mass. 47, 59 (1975). A system of evidence depends on relevancy and credibility. The very existence of information that, as a matter of common sense and experience, supports the credibility of a witness prompts the conclusion that, so long as it is not remote, it ought to be

admitted. *Commonwealth* v. *Tobin*, 392 Mass. 604. 613 (1984). Contrast *Commonwealth* v. *Burke*, 339 Mass. 521, 533-534 (1959). Once admitted, the weight to be accorded the evidence is a question for the jury. *Commonwealth* v. *Weichell*, 390 Mass. 62, 74 (1983), cert. denied, 465 U.S. 1032 (1984).

It is not necessary that the evidence in question bear directly on the issue or be conclusive of it. So long as it has a tendency to prove a proposition, it is admissible simply because it "helps a little." *Commonwealth* v. *Tucker*, 189 Mass. 457, 467 (1905). For more recent cases illustrative of the breadth of the relevancy concept, see *Commonwealth* v. *Fayerweather*, 406 Mass. 78, 83 (1989); *Commonwealth* v. *Gordon*, 407 Mass. 340, 351 (1990); *Commonwealth* v. *Cardoza*, 29 Mass. App. Ct. 645, 647-648 (1990); *Commonwealth* v. *Pare*, 43 Mass. App. Ct. 566, 572-573 (1997), *S.C.*, 427 Mass. 427 (1998). On the other hand, evidence has been properly excluded on the ground of remoteness, i.e., where the links in the chain are too attenuated. See *Commonwealth* v. *Chasson*, 383 Mass. 183, 186-187 (1981); *Commonwealth* v. *Palmariello*, 392 Mass. 126, 137 (1984); *Commonwealth* v. *Jacobson*, 19 Mass. App. Ct. 666, 678-679 (1985); *Commonwealth* v. *LeCain*, 19 Mass. App. Ct. 1034, 1035-1036 (1985); *Commonwealth* v. *Bettencourt*, 20 Mass. App. Ct. 923, 925 (1985).

Applying these standards to the case before us, whether Ramirez particularly recalled the complainant being with him at the time of the alleged attack was a legally proper subject of inquiry. When the matter first arose on direct examination, defense counsel made an offer of proof that it was "out of the ordinary" for Ramirez to stay at work for four hours after his shift and told the judge "he would remember this day in particular." Ramirez's recollection of the particular day had a "rational tendency to prove an issue in the case." *Commonwealth* v. *Fayerweather*, 406 Mass. at 83. The judge, therefore, erred in excluding the evidence in the first instance.

Even if we were to accept the government's position that the evidence lacked relevance when offered on direct examination, it became relevant after the prosecutor, on cross-examination, challenged Ramirez's claim that he remembered the day in question and suggested that his testimony was merely a fabrication. Since the defendant had been barred, on the prosecutor's objection, from explaining why Ramirez did remember that day, the prosecutor's cross-examination manipulated its absence to

the government's advantage. This practice was held to be fundamentally unfair in *Commonwealth* v. *Haraldstad*, 16 Mass. App. Ct. 565, 568 (1983), citing *Commonwealth* v. *Mosby*, 11 Mass. App. Ct. 1, 9 (1980). See *Commonwealth* v. *Thevenin*, 33 Mass. App. Ct. 588, 593-594 (1992).

Thus, when defense counsel, on redirect, again attempted to show the reason Ramirez remembered the events, the evidence was not only relevant but independently admissible for the purpose of rehabilitating the witness. "It is well established that a witness may explain, modify, or correct damaging testimony that was elicited on cross-examination." *Commonwealth* v. *Mandeville*, 386 Mass. 393, 400 (1982) (where prosecutor suggested on cross-examination that defendant had "no apparent reason" for claimed state of mind, thus creating impression that claim was "fabrication," defendant had a "right to show that he did have a reason"). See *Commonwealth* v. *Errington*, 390 Mass. 875, 880-881 (1984) (stressing importance of rehabilitation to answer "why" questions suggested by impeachment). See also Liacos, Massachusetts Evidence § 6.16, at 332 (6th ed. 1994). The exclusion of the evidence constituted error.[2]

The testimony of the complainant was inconsistent (as was, to some degree, the evidence from the various hospitals and clinics that treated the complainant's injuries). Given that the government's case was not strong and that resolution of the case turned on the witnesses' credibility, the excluded evidence of Ramirez, the defendant's primary witness, was not harmless. If believed, his testimony was a plain contradiction of the complainant's version of where and when the attack took place. The defendant's account of the time in question was presented solely through Ramirez and, if believed, his testimony raised genuine doubt about the credibility of the complainant's testimony.[3] It cannot be said "with fair assurance" that exclusion of the proffered evidence "did not influence the [outcome], or had but very slight effect." *Commonwealth* v. *Federico*, 425

[2]When the evidence was excluded on redirect, defense counsel requested to approach the bench, but the judge would not discuss her ruling. Contrary to the Commonwealth's argument, no further offer of proof was necessary after the redirect examination. *Commonwealth* v. *Caldron*, 383 Mass. 86, 89 n.2 (1981). See Proposed Mass.R.Evid. 103(a)(2) (1980) (offer unnecessary where substance of the expected testimony is "apparent from the context within which questions were asked").

[3]As noted, the complainant's account of time was inconsistent, and it did not always match up with other witnesses' accounts.

Mass. 844, 852-853 (1997), and cases cited. See *Commonwealth v. Ford*, 397 Mass. 298, 302 (1986) (reversing convictions under this standard where the "decisive," if not sole, issue at trial was witness credibility).

2. *Admission of evidence that the defendant engaged in similar conduct on a subsequent occasion.* If any doubt remains concerning the extent to which error affected the outcome of this trial, it must be resolved in the defendant's favor because of the admission of the so-called "bad conduct" testimony. Before impanelment of the jury, the prosecutor sought (by motion in limine) to have John M. Grennon, a deputy sheriff at the Nashua Street jail, testify concerning an incident that occurred on February 24, 1996, nearly four months after the events that gave rise to these charges. The prosecutor expected Grennon to say that the defendant poured a cup of boiling hot chocolate on the neck and shoulder of another pretrial detainee. Defense counsel objected, but the judge reserved her ruling until the matter arose in the context of direct examination of the government's witness. At the end of the presentation of the government's case, and over defense counsel's objection,[4] the judge did permit Grennon to testify about the scalding incident at the jail. At the conclusion of this testimony, the judge properly instructed the jury that the testimony was admitted for the limited purpose of showing "whether there is a pattern of conduct."

We acknowledge that "the judge's determination of these questions will be upheld on appeal absent palpable error." *Commonwealth v. Valentin*, 420 Mass. 263, 270 (1995), quoting from *Commonwealth v. Dunn*, 407 Mass. 798, 807 (1990). Here, however, the probative value of this testimony was outweighed by its prejudicial effect, see *Commonwealth v. Brusgulis*, 406 Mass. 501, 505 (1990), especially because the jury heard that it happened while the defendant was awaiting trial on this case. We are mindful of the danger in speculating about a jury's reasoning and the restraint that should be exercised in doing so. See *Commonwealth v. Seminara*, 20 Mass. App. Ct. 789, 798 (1985). Even so, evidence of this nature undoubtedly would have loomed large in the jury's consideration of the defendant's

---

[4]During Grennon's testimony, defense counsel objected on the separate ground that it showed that the defendant was held "in custody" prior to trial, which was "highly prejudicial." The judge dismissed that objection on the basis that the prosecutor "has to establish where this incident occurred."

guilt and might have resolved their doubts in favor of conviction. See *Commonwealth* v. *Picariello*, 40 Mass. App. Ct. 902, 903 (1996). The danger was aptly described in *Commonwealth* v. *Stone*, 321 Mass. 471, 473 (1947), which warned that "[i]t does not follow that, because the defendant committed a similar offence on another occasion, he committed the crime for which he is being tried. And there is the danger that, because a defendant appears to be a bad man capable of, and likely to commit, such a crime as that charged, a jury might be led to dispense with proof beyond a reasonable doubt that he did actually commit the crime charged."

Finally, the verdicts themselves suggest that the bad act may have been the key factor that led the jury to convict. Although the case turned very heavily on the credibility of the complainant's account, particularly as to her claim that the perpetrator was the defendant, the jury acquitted the defendant of some of the charges (including four felonies), but convicted him of others, notably the three charges involving assaults with scalding coffee. This outcome shows that the jury simply disbelieved many of the complainant's claims. It also demonstrates that the jury accepted mainly those claims that were corroborated by medical evidence of injury. However, the medical evidence could provide the jury with no assistance on the ultimate issue — whether the crimes that did occur were committed by the defendant.

The judgments and the convictions placed on file are reversed, and the verdicts are set aside.[5]

*So ordered.*

---

[5]In the event the government chooses to retry the defendant, it has acknowledged in its brief that, if the defendant is convicted of mayhem, the indictment charging him with assault and battery by means of a dangerous weapon (to wit, scalding coffee) should be dismissed as duplicative.