## Commonwealth *vs*. Joshua Dargon (No. 1).

No. 07-P-409.

Plymouth. October 7, 2008. - May 29, 2009.

Present: Duffly, Brown, & Wolohojian, JJ.

Further appellate review granted, 455 Mass. 1101 (2009).

*Rape. Indecent Assault and Battery. Assault and Battery. Assault and Battery by Means of a Dangerous Weapon. Evidence,* Hospital record, Hearsay, First complaint. *Practice, Criminal,* Assistance of counsel, Argument by prosecutor.

At the trial of indictments charging the defendant with aggravated rape, indecent assault and battery on a person over fourteen years, assault and battery, and assault and battery by means of a dangerous weapon, the judge did not err in admitting in evidence a certain form as part of the victim's medical records, where the victim's statements contained in the form did not constitute hearsay [333-335] or multiple complaint testimony [335-338], in that the statements contained in the form rebutted the defendant's contention that the victim had forgone numerous opportunities to tell various parties that she had been raped, and that her testimony in court was recently contrived.

At a criminal trial, the prosecutor's closing argument did not shift the burden of proof by suggesting that the defendant bore the burden of introducing scientific evidence regarding a particular point, but rather was an appropriate response to defense counsel's argument, which suggested that the police could have but failed to conduct tests that would have established that point. [338-340]

The criminal defendant's trial counsel was not ineffective for failing to seek suppression of the defendant's statements on the ground of a warrantless stop, where the defendant failed to demonstrate that the motion likely would have been successful [340-341]; further, counsel was not ineffective for failing to object to a jury instruction on consciousness of guilt [341]; finally, the jury would not have misunderstood the thrust of trial counsel's closing argument [341].

Indictments found and returned in the Superior Court Department on March 12, 2004.

The cases were tried before *Linda E. Giles*, J.

*Edward J. O'Brien* for the defendant.

*Mary E. Lee*, Assistant District Attorney, for the Commonwealth.

Duffly, J. Following an attack on the victim in the lobby of

her condominium building, the defendant was charged and ultimately convicted by a Superior Court jury of aggravated rape, G. L. c. 265, § 22(*a*); indecent assault and battery on a person over fourteen years, G. L. c. 265, § 13H; assault and battery, G. L. c. 265, § 13A; and assault and battery by means of a dangerous weapon, G. L. c. 265, § 15A(*b*). The defendant appeals, arguing reversal is warranted due to the improper admission of evidence, improper closing argument, and ineffective assistance of counsel.[1]

Identification was not a live issue at trial, nor did the defense suggest that the defendant had not committed the assault and battery offenses. Rather, the defense sought to portray the defendant as a young man who had acted impulsively in grabbing the victim's purse in an effort to take her money (because he wanted to buy a present for his mother with whom he had recently argued), but who had not committed the acts constituting indecent assault or rape.[2] In support of the theory that no sexual attacks occurred, defense counsel argued at trial that the victim delayed reporting that she had been sexually assaulted despite having had communications with numerous individuals following the incident.

On appeal, the defendant claims that 1) a hospital form completed by a sexual assault nurse examiner (SANE or SANE nurse) that recorded the victim's responses to questions should not have been admitted in evidence because it included prejudicial hearsay statements of the victim which violated the restriction against multiple complaints in a sexual assault case; 2) defense counsel rendered ineffective assistance; and 3) the prosecutor's closing was improper in various respects. We affirm.

---

[1]The defendant also appeals from the denial of his motions for a required finding of not guilty and to suppress his statements to police. His "arguments have been considered and rejected in a memorandum and order pursuant to Appeals Court Rule 1:28, as amended, 46 Mass. App. Ct. 1001 (1998), also issued this day." *Adoption of Yvette*, 71 Mass. App. Ct. 327, 328 n.5 (2008). See *Commonwealth* v. *Dargon (No. 2), post* 1114 (2009).

[2]In evidence was the defendant's statement to police, made after Miranda warnings were administered, in which, while denying that the attack was sexual in nature, he asked without prompting whether he would have to register as a sex offender. It was in the course of these statements that the defendant said he had had a fight with his mother; that as he was walking around he saw "a lady at British Landings. I saw her with five dollars and thought to myself . . . 'I want to buy Mommy something.' So when I walked by her, I went to grab it and accidentally pushed her."

Commonwealth *v.* Dargon (No. 1).

*Facts.* We summarize the facts as the jury could have found beyond a reasonable doubt, viewed in the light most favorable to the Commonwealth. *Commonwealth* v. *Latimore,* 378 Mass. 671, 676-677 (1979). Additional facts have been reserved for discussion where relevant.

The victim, a grade school teacher, returned to her condominium from work on February 13, 2004, a Friday evening, carrying a bag and her pocketbook. She entered the lobby area of the building, which contained mailboxes, callboxes, and a locked interior door leading to the condominium units. The only other person in the lobby was the defendant, who was standing with his back to the victim, but turned and greeted her when she entered. She was inserting her key in the door leading to the condominium units when the defendant grabbed her from behind, putting his arm around her neck and his hand over her mouth. He hit the victim several times about her head, forced her to the ground and hit her head against the floor. As the victim screamed, the defendant kicked her in the head with his shod foot; he then knelt on the victim's abdomen and arm, pinning her to the floor, and with his hand under her shirt and brassiere he fondled her breast. He then put his hand down the front of her pants, tearing her underwear into two pieces, and digitally penetrated her vagina; he also put his hand down the back of her pants and touched her anus without penetration. During the attack the victim scratched the defendant's neck and pulled off a necklace he was wearing. At some point, the defendant picked up the victim's pocketbook and looked inside.

A neighbor, hearing noises from her second-floor apartment in the building, left her apartment to see what was happening in the lobby. As she came down the stairs she first heard a women's fearful sounding voice; as she continued to descend the stairs she arrived at a point where she could see "[s]omeone was punching, kicking whoever was on the floor." She yelled out, "What the fuck are you doing to her?" The defendant dropped the victim's purse and fled; the neighbor followed him to the door to see in which direction he went. The neighbor's fiancé had by this time also come upon the scene and used his cellular telephone to call the police. In a 911 call to the Wareham police department, the dazed-sounding victim stated to the dispatcher: "He went up my shirt. He stole my purse. . . . He took my purse. . . . He beat

me."³ The victim was then taken to the hospital where she received treatment and was examined by a SANE.

*Discussion.* 1. *Admission of Form 2.* The victim's medical records were admitted under G. L. c. 233, § 79.⁴ A form included in these records, entitled, "Commonwealth of Massachusetts Sexual Assault Evidence Collection Kit, Information Pertaining to Assault" (Form 2), was the subject of the defendant's pretrial motion in limine that sought to redact the "patient's statements to SANE nurse as recorded in [the SANE] kit."⁵ Noting the defendant's objection, the judge ordered that certain information provided by the victim and recorded on Form 2 be redacted but that the remaining recorded responses were admissible as "germane to treatment and history."

On appeal, the defendant argues that it was error to admit the form because 1) it contained unfairly prejudicial hearsay statements of the victim, and 2) it was evidence of multiple complaint admitted in violation of *Commonwealth* v. *King*, 445 Mass. 217, 219 (2005), cert. denied, 546 U.S. 1216 (2006).

---

³The 911 tape was admitted at trial under the first complaint rule enunciated in *Commonwealth* v. *King*, 445 Mass. 217, 219 (2005), cert. denied, 546 U.S. 1216 (2006). See Mass. G. Evid. § 413 (2008-2009). After a hearing, the judge denied the Commonwealth's motion in limine, in which it sought to substitute the 911 tape with a later complaint, on the ground that the victim was too distraught to speak coherently and in detail to the dispatcher. The Commonwealth argued that the testimony of the police officer who responded to the scene should have been admitted as first complaint; he spoke with the victim moments after the beating and she stated to him that her attacker had pulled up her shirt and rubbed her breasts with both hands.

⁴The statute provides that "[r]ecords kept by hospitals . . . shall be admissible . . . as evidence in the courts of the commonwealth so far as such records relate to the treatment and medical history of such cases . . . but nothing therein contained shall be admissible as evidence which has reference to the question of liability." G. L. c. 233, § 79, added by St. 1941, c. 389, § 2. See Mass. G. Evid. § 803(6)(B).

⁵The motion is not included in the record but its title was read by the judge and is also reflected on the docket. From the hearing transcript, we also glean that defense counsel's objection was to the victim's statements as reflected on Form 2. He did not argue that the heading on the form or any printed questions should be redacted, or that Form 2 was inadmissible in its entirety. Counsel argued: "Form 2 contains comments . . . like covering her mouth with his hands, put his hand in the vaginal area, put his finger in the vagina, hand between the buttocks. And on the second page where the [the form lists] weapon of force used, she said he said 'Shut up.' Repeatedly hit and kicked her in the head, held her down with his knees. He overpowered her. 'Bigger than me.' "

a. *Form 2 statements as hearsay.* Mary Griffin testified that she was a nurse employed by the Department of Public Health as an adult SANE.[6] In that capacity, Griffin examined the victim (referred to by Griffin as "the patient") at the hospital and completed Form 2 as part of the sexual assault evidence collection kit. She testified that a patient's responses to the Form 2 questionnaire provide information regarding the location of injuries, as well as guidance as to where on a patient's body the SANE will perform a swab for semen or saliva, as well as a control swab. On the evening of February 13, 2004, Griffin responded to a call from the hospital where the victim had been brought. Once there, she obtained the victim's consent to conduct an examination, asked her questions contained on Form 2, and completed the form based on her responses.

The defendant focuses specifically on the victim's response as recorded on the Form 2 that her assailant "covered her mouth with his hands, put his hand in the vagina area, put his finger in her vagina, hand between buttocks, hands up her shirt and 'groped' breasts."

We need not decide whether, under cases relied on by the parties and decided before *Commonwealth* v. *Stuckich*, 450 Mass. 449, 456-457 (2008), and *Commonwealth* v. *Arana*, 453 Mass. 214, 231-232 (2009), Form 2 containing the victim's statements was properly admitted as a record relating to treatment and medical history of the victim "even though the statements 'bearing on criminal culpability . . . seem to relate at most only incidentally to medical treatment.' " *Commonwealth* v. *McCready*, 50 Mass. App. Ct. 521, 524 (2000), quoting from *Commonwealth* v. *Dube*, 413 Mass. 570, 573 (1992). Here, the trial judge determined that the victim's statements recorded on Form 2 related to the victim's treatment and medical history and were thus indepen-

---

[6]An examination conducted by a SANE, see *Commonwealth* v. *Walker*, 69 Mass. App. Ct. 137, 139 & n.3 (2007), cert. denied, 552 U.S. 1195 (2008), is distinct from a SAIN (Sexual Abuse Intervention Network) interview that occurs on a child's report of sexual abuse. See *Commonwealth* v. *Howell*, 57 Mass. App. Ct. 716, 718 & n.2 (2003) ("A SAIN interview, observed by representatives from several authorities [i.e., Department of Social Services, police department, etc.] behind a one-way mirror, spares a child complainant from undergoing repeated questioning regarding sensitive matters related to ascertaining whether sexual abuse has occurred").

dently admissible pursuant to G. L. c. 233, § 79. We agree that the form was admissible, but on a different ground, as we discuss in the next section.

b. *Form 2 as multiple complaint.* The defendant further contends that the victim's allegations of sexual assault recorded on Form 2 constituted multiple complaint testimony prohibited by *Commonwealth* v. *King*, 445 Mass. at 219.

"The scope of the first complaint doctrine is not without limits. It does not, of course, prohibit the admissibility of evidence that, while barred by that doctrine, is otherwise independently admissible." *Commonwealth* v. *Arana*, 453 Mass. at 220-221, citing *Commonwealth* v. *Montanez*, 439 Mass. 441, 456 (2003) (Sosman, J., concurring) ("Obsession with the strictures imposed on [first] complaint testimony should not blind us to the fact that [first] complaint is not the only basis for admitting such evidence"). See *Commonwealth* v. *Lyons*, 71 Mass. App. Ct. 671, 674 n.4 (2008). Compare *Commonwealth* v. *Stuckich*, 450 Mass. at 456-457.

The thrust of the defense, as made clear in opening and closing arguments and the conduct of the trial, was that the victim had had numerous opportunities to tell her neighbors, family members, police, and hospital personnel that she had been digitally raped, but that she had not done so. In opening argument, counsel told the jury they would see how the victim's story changed from the description she gave to the dispatcher in the 911 tape, where she repeats that he stole her purse but mentions no rape or indecent assault:

"She passes one, two, three, four, please count, the number of people that she passes that she has an opportunity to tell that she was raped. She never says, I was raped. She doesn't say it to her neighbor. She doesn't say it to the dispatcher. She doesn't say it to the two police officers that arrive. She doesn't say it to a male and female nurse paramedic. The nurse paramedic is in back with her. She doesn't say it to the triage nurse. She doesn't say it to the treatment nurse. She doesn't say it to the doctor.

"All these people over the course of hours have treated her, have been with her, have had her in their safety. And she complains that he took my bag."

The Commonwealth could well have anticipated from this that the victim's credibility would be attacked on the basis of her supposed silence. It could therefore seek admission of the statements on Form 2 to shore up her testimony at trial. See *Commonwealth* v. *Emence*, 47 Mass. App. Ct. 299, 302 (1999), citing *Commonwealth* v. *Haraldstad*, 16 Mass. App. Ct. 565, 568 (1983). Defense counsel's anticipated strategy was borne out as the case unfolded. During cross-examination of the victim, defense counsel elicited information about each individual she encountered from the time of the assault until her interview with the SANE, noting the time frame and the fact that there were conversations. During direct examination of the paramedic who had accompanied the victim to the hospital, defense counsel objected when, in response to the prosecutor's question about the victim's emotional state, the paramedic testified "she said she had been grabbed or groped." The judge sustained the objection and the prosecutor stated, "Just her emotional state." This strategy was brought home to the jury in his closing when counsel again urged the jury "to keep a time line. And I ask you to pay attention to what was said. And in the beginning, you found out that there was a 911 call and that there were people present. And you know how many people were there. . . . The 911 tape says, is crystal clear, what her initial complaint is." Defense counsel repeated his cataloging of the numerous individuals the victim encountered, suggesting in essence that if the victim had been telling the truth, she would have told more of those she encountered throughout the evening that she had been raped and indecently assaulted.[7,8]

---

[7]Counsel argued, "And I would suggest to you that when you are listening to the 911 tape — listen to it carefully. At the time she has an opportunity to tell the police what happened. And this is consistent throughout the entire event, the whole six hours that all this is going on. It's 7:30 at the time, to 1:30 when the SANE nurse leaves. There is a consistent statement that you heard all throughout this. And I suggest to you, please listen to the 911 tape." He stated further: "[W]hat [the police] didn't do that night was they allowed themselves to be led towards the sexual assault. They get called in for a sexual assault. And it becomes a sexual assault. It doesn't become what was originally called in. A mugging. He took my bag. He went up my shirt. And if you believe her in any way that she was fondled, the judge is going to instruct you on the law about that. But if you believe that it was the result of the struggle, the judge will instruct you about that also."

[8]In her general instructions the judge advised the jury: "The alleged victim

When the defense exploits a victim's purported "silence" about a sexual assault to suggest that later statements — made to the SANE and in court — were a recent contrivance,[9] the Commonwealth should be permitted, within reason, to admit evidence of the victim's prior consistent statements.[10] See *Commonwealth v. King, supra* at 241 (prior consistent statements by victim admissible to rebut claims of recent contrivance if statements were made prior to any alleged motive to lie). See also *Commonwealth v. Knight,* 437 Mass. 487, 497 (2002), quoting from *Commonwealth v. Saarela,* 376 Mass. 720, 723 (1978) ("The trial judge has 'wide discretion in deciding whether the circumstances warrant the admission of a witness's prior consistent statements when [the witness] has been or will be impeached with an inconsistent statement"). "The doctrine [prohibiting multiple complaint testimony] is not intended to be used as a shield to bar the jury from obtaining a fair and accurate picture of the Commonwealth's case-in-chief. . . . If . . . after careful balancing of the testimony's probative and prejudicial value, testimony is found by the judge to be relevant and admissible for reasons that are independent of the first complaint doctrine, in the context of a particular case, it is within the judge's discretion to admit the testimony. In this way, the jury will be able to make a fairer and more accurate assessment of the Commonwealth's case." *Commonwealth v. Arana, supra* at 228-229.

Defense counsel in this case persistently invoked the victim's

may have reported the alleged sexual assault to more than one person. However, our rules normally permit testimony only as to the alleged victim's first report."

[9]Defense counsel was aware that there was evidence that the victim had made earlier disclosures about the sexual assaults. As revealed in the hearing on the motion in limine, she spoke to the police officer first appearing at the scene, telling him the attacker had pulled up her shirt and rubbed her breasts with both hands. See note 3, *supra.* An emergency room nurse on duty the night of the assault testified that "the patient stated that she had been sexually assaulted." She also made this report to a second police officer while at the hospital.

[10]That defense counsel stated during closing argument, "Now, I am not saying to you that [the victim] didn't believe that [the indecent assault] happened," does not detract from the over-all thrust of the defense: that her silence about a rape and indecent assault, when she was in the presence of neighbors, family members, numerous police officers, and medical providers throughout the evening, suggests that these charges of assaults were fabricated.

supposed silence about the assault to shore up the claim that the statements made to the SANE, and as testified to in court, were recently contrived. As in *Commonwealth* v. *Parreira*, 72 Mass. App. Ct. 308, 318 (2008), cross-examination was designed to cast doubt on the victim's credibility by bringing "forward extensive testimony regarding the identities and number of people whom [the victim] had told about the incident," and suggesting delay in reporting the incident to a responsible adult. *Ibid.* The victim's statements recorded on Form 2 were properly admitted to rebut the claim of recent contrivance. Such evidence was appropriate to "help [the] jury assess the specific defense theories as to why the complainant is making a false allegation." *Commonwealth* v. *Arana*, *supra* at 220, quoting from *Commonwealth* v. *King*, *supra* at 246. See *Commonwealth* v. *Parreira*, *supra* at 318 n.9 ("Because the defendant pursued this strategy, there is no merit to his suggestion on appeal that the complainants were impermissibly permitted to testify that they had told a number of people about the rapes"). See also *Commonwealth* v. *Harris*, 443 Mass. 714, 731 (2005) (where defense counsel, "cognizant of the limitations imposed by the rape-shield statute," refrained from introducing evidence of complainant's history of prostitution, "[i]t was improper for the prosecutor to suggest to the jury that the absence of any evidence that the complainant engaged in prostitution meant that she was not a prostitute").

*2. Closing argument.* We address briefly the defendant's claims of error relating to closing argument bearing in mind that "[r]emarks made during closing argument are viewed in the context of the entire argument, and in light of the judge's instruction to the jury, and the evidence at trial." *Commonwealth* v. *Zavala*, 52 Mass. App. Ct. 770, 776 (2001), citing *Commonwealth* v. *Yesilciman*, 406 Mass. 736, 746 (1990).

The defendant challenges this portion of the closing:

PROSECUTOR:     "As has been pointed out to you, identity is not an issue. I'm going to suggest to you that there was — which I'll address now. I decided to address it myself rather than object. But you heard an argument by counsel with regard

to they should have done a DNA test on the defendant's fingernails to show what he had done. There is not a scintilla, a tiny speck of evidence, that DNA analysis can determine what part of a person's body a suspect has touched."

DEFENSE COUNSEL: "Objection, Your Honor."

PROSECUTOR: "You don't have a bit of evidence about that in front of you."

THE COURT: "Overruled."

PROSECUTOR: "That calls for speculation. That calls for speculation and I cannot allow it to stand. And that's why I point it out to you. That is what is called a red herring, a distraction, classic blame the police, shabby investigation, blame the victim's memory, blame anybody but where the finger of blame should be pointed. Directly at this man. A vicious, brutal attacker on an innocent woman. Complete stranger to him."

The defendant first contends that the argument impermissibly shifts the burden of proof by suggesting that the defendant had to introduce scientific evidence that his hand did not come in contact with the victim's genital area. We disagree. Although the prosecutor may have overstated the case by commenting, "There is not a scintilla, a tiny speck of evidence, that DNA analysis can determine what part of a person's body a suspect has touched,"[11] the over-all thrust of the argument was proper. "[A] prosecutor may properly comment to correct 'an erroneous impression created by opposing counsel.' " *Commonwealth* v. *Kozec*, 399 Mass. 514, 519 n.9 (1987), quoting from *Commonwealth* v. *Bradshaw*, 385 Mass. 244, 277 (1982). The prosecutor's argument was an appropriate reply to defense counsel's argument, which suggested

---

[11]During cross-examination of one of the police officers, defense counsel elicited that the police had failed to swab the defendant's fingers for DNA. No expert testified as to whether it was possible to determine what area of the body a person has touched based on DNA evidence obtained from fingernail scrapings or swabs.

that the police could have conducted tests that would have established where the defendant's hands had been, but failed to do so. See *Commonwealth* v. *Prendergast*, 385 Mass. 625, 633-634 (1982). The prosecutor could properly point out that the defendant's argument regarding what DNA evidence and finger swabbing could or could not establish was not supported by the evidence at trial. Though the use by a prosecutor of the term "red herring" has been held to be inappropriate, here it was used to comment "on a defendant's attempt to confuse or distract the jury by diverting their attention from the strong evidence of the defendant's guilt." *Commonwealth* v. *Cohen*, 412 Mass. 375, 388 (1992). Compare *Commonwealth* v. *McCravy*, 430 Mass. 758, 765 (2000).[12]

3. *Ineffective assistance of counsel.* The defendant claims for the first time on appeal that his defense counsel was ineffective. "[A]n ineffective assistance of counsel challenge made on the trial record alone is the weakest form of such a challenge because it is bereft of any explanation by trial counsel for his actions and suggestive of strategy contrived by a defendant viewing the case with hindsight." *Commonwealth* v. *Peloquin*, 437 Mass. 204, 210 n.5 (2002). We nevertheless may resolve the issue when "the factual basis of the claim appears indisputably on the trial record." *Commonwealth* v. *Anderson*, 58 Mass. App. Ct. 117, 124, cert. denied, 540 U.S. 1009 (2003).

Counsel was not ineffective for failing to seek suppression of the defendant's statements on the ground of a warrantless stop, because he cannot demonstrate that the motion likely would have been successful.[13] See *Commonwealth* v. *Comita*, 441 Mass. 86, 91 (2004). The defendant was questioned by the police, who saw him walking about one mile from the crime scene. A seizure was not effectuated when the officer pulled his cruiser over to where

---

[12]Contrary to the defendant's claim on appeal, the prosecutor did not tell the jury that the defendant had made a "full confession." The prosecutor, addressing the lack of a recording of the defendant's confession, stated: "There's no indication in here that — full confession by the defendant. He admitted to everything. Oh, and by the way, we didn't record it." Although inelegantly phrased, the jury would have understood from the context what the prosecutor was arguing: that despite the absence of an audiotape recording of the defendant's confession, it was voluntarily given.

[13]Efforts to suppress the necklace would have been futile, as it was not seized from the defendant but recovered from the scene.

the defendant was walking and asked him to identify himself. See *Commonwealth* v. *Thin Van Cao*, 419 Mass. 383, 387-388, cert. denied, 515 U.S. 1146 (1995). Compare *Commonwealth* v. *Mock*, 54 Mass. App. Ct. 276, 278 (2002).

In any case, the police had a reasonable basis to stop the defendant, who matched the description provided to police and was the only person they saw walking in the direction in which the assailant had reportedly fled. See *Commonwealth* v. *Albizu*, 11 Mass. App. Ct. 951, 951-952 (1981); *Commonwealth* v. *Quinn*, 68 Mass. App. Ct. 476, 481 (2007).

Counsel was not ineffective for failing to object to the jury instruction on consciousness of guilt. The instruction did not permit the jury to infer guilt in the absence of any evidence of flight from police.

The defendant's trial counsel argued throughout the case that the defendant had committed an assault and a robbery but that he had not committed a sexual assault or digital rape. We disagree that counsel's statement in closing, "[I]t's an impulsive act," referred to the rape rather than the attempted robbery. The jury would not have misunderstood the thrust of the argument, brought home in defense counsel's last statement in his closing argument: "And I think you will find that it was not a sexual assault. It was a fight over her bag that got out of control and it's his fault. But it wasn't a sexual assault."

*Judgments affirmed.*