COMMONWEALTH *vs.* JOSE C. RESENDES.

No. 90-P-483.

Bristol. January 16, 1991. - April 5, 1991.

Present: WARNER, C.J., SMITH, & IRELAND, JJ.

*Evidence*, Failure to produce witness. *Practice, Criminal*, Argument by
    prosecutor, Instructions to jury.

At the trial of a complaint charging the defendant with two counts of as-
    sault and battery on a police officer in which the defendant's case rested
    on his assertion that he responded in self-defense to an unjustified at-
    tack by a police officer (to which the defendant's sister was a witness),
    reversal of the defendant's convictions was required where there was
    insufficient support in the record for allowing the prosecutor, over the
    defendant's objection, to cross-examine the defendant's fiancée about
    the defendant's failure to call his sister as a witness; or for the prosecu-
    tor's comment in closing that the witness had not been called because
    her testimony would have been adverse to the defendant; or for the
    judge's instructions to the jury regarding a so-called "missing witness."
    [431-434]

COMPLAINT received and sworn to in the Taunton Division
of the District Court Department on November 14, 1988.

On appeal to the jury session of the Fall River Division,
the case was tried before *Robert L. Anderson*, J.

*Joseph Krowski* for the defendant.

*Cynthia A. Vincent*, Assistant District Attorney, for the
Commonwealth.

WARNER, C.J. After trial before a jury of six in a District
Court, the defendant was convicted of two counts of assault
and battery on a police officer.[1] On appeal, we need only ad-
dress in detail the defendant's claim of error in the prosecu-

---

[1]The defendant had also been charged with resisting arrest and disor-
derly conduct. At a previous trial, he had been acquitted on the former
charge; the latter was not prosecuted.

tor's argument and the judge's instructions regarding a so-called missing witness.

We briefly sketch the essential and conflicting evidence. The Commonwealth's version of the incident was as follows. Three Taunton police officers responded to a report of a disturbance in a dwelling. Relatives of the defendant informed the police that the defendant had caused damage in the home after an argument and directed them to the third-floor apartment where the defendant lived with his fiancée, Cheryl Ponds. During the course of police inquiry as to the problem, the defendant lunged at one police officer and pushed and punched him to the floor. The defendant hit another officer who came to the aid of the first. The defendant was subdued, placed under arrest, handcuffed and led outside.

According to the defendant and Ponds, the defendant simply refused to answer one of the police officers' questions. It was the officer, who stood nearly six feet tall and weighed about two hundred pounds, who initiated physical contact by pulling the five feet seven inch, one hundred and forty-five pound defendant out of a chair and shoving him. The frightened defendant reflexively pushed the officer back. A second officer jumped on the defendant, and he was handcuffed. As this was happening, an officer raised his billy club as if to hit the defendant between the legs but apparently refrained on Ponds' exclamation. As the police were taking the defendant outside, the officer who initially attacked the defendant pushed him down five cement steps. At the police station, the same officer pulled the handcuffed defendant out of his chair by his ears.

1. Ponds testified during cross-examination that a sister of the defendant (otherwise unidentified) was the only family member present when the police officer threw him down the steps. Over the defendant's objection, the prosecutor was permitted to cross-examine Ponds about the defendant's failure to call his sister as a witness. The prosecutor argued in closing that the witness had not been called because her testi-

mony would have been adverse to the defendant.[2] The jury
were instructed that they could infer that the absent wit-
ness's testimony would have been adverse to the defendant if
they determined that (1) the Commonwealth's case was
strong, (2) the absent witness would be expected to give im-
portant testimony supporting the defendant's innocence,
(3) the absent witness was available to the defendant, and
(4) the witness's absence was not explained by any of the
other circumstances in the case. See *Commonwealth* v.
*Zagranski*, 408 Mass. 278, 287 (1990). The defendant ob-
jected to the prosecutor's closing argument and the giving of
the instruction. There was error.

A judge may properly permit the jury to consider a party's
failure to call a witness under the following circumstances:
"Where a party has knowledge of a person who can be lo-
cated and brought forward, who is friendly to, or at least not
hostilely disposed toward, the party, and who can be ex-
pected to give testimony of distinct importance to the case,
the party would naturally offer that person as a witness. If,
then, without explanation, he does not do so, the jury may, if
they think reasonable in the circumstances, infer that that
person, had he been called, would have given testimony unfa-
vorable to the party." *Commonwealth* v. *Schatvet*, 23 Mass.
App. Ct. 130, 134 (1986). *Commonwealth* v. *Zagranski*,
*supra*. Whether the prosecutor was entitled, over objection,
to inquire about the defendant's sister as a witness and
whether there was sufficient record support for the prosecu-
tor's comment and the judge's instruction on a "missing wit-
ness" were questions of law for the judge. *Commonwealth* v.
*Schatvet*, *supra* at 135. *Commonwealth* v. *Vasquez*, 27
Mass. App. Ct. 655, 658 (1989). *Commonwealth* v. *Sena*, 29
Mass. App. Ct. 463, 467 (1990). "Because the inference,
when it is made, can have a seriously adverse effect on the
noncalling party — suggesting, as it does, that the party has

[2]The prosecutor argued: "[I]f the sister were there who he says he gets
along with, why isn't she here to testify, yes, I saw Officer Warren Auffley
throw him down the stairs. That is outrageous conduct, there's no question
about it. I suggest to you it didn't happen. . . ."

wilfully attempted to withhold or conceal significant evidence — it should be invited only in clear cases, and with caution." *Commonwealth* v. *Schatvet, supra* at 134-135. "This is a delicate area, requiring caution . . . . In the absence . . . of evidence supporting the giving of an absent witness charge, no such charge should be given." *Commonwealth* v. *Zagranski, supra* at 287, 288.

Here, the questions of law should have been decided in the negative. Prior to the prosecutor's questions about the missing witness, evidence had been presented strongly suggesting that the defendant and this sister were unfriendly. Ponds had testified that the defendant had argued with his sisters the evening of the disturbance. She also testified that she did not get along with the defendant's sisters and that this had something to do with the disturbance. Ponds herself had been arrested that night in part because of angry comments she made to the sister in question, accusing her of merely standing by while the defendant was thrown down the stairs.[3] The defendant's counsel specifically objected to the prosecutor's cross-examination on the ground of the evidence of hostility.

The judge nevertheless permitted the prosecutor to ask Ponds about the defendant's relationship to his sister, where the sister resided, and whether any attempt had been made to call her as a witness. Ponds answered "no" to the final question. Ponds' single word characterization of the defendant's relationship with his sister as "good" did not obviate the evidence of hostility that had been presented. The defendant subsequently testified that he had argued with his sister on the night in question and had kicked in a gate because he was so angry. Asked, under cross-examination, whether he got along with his sister, he replied, "I try to get along with everybody," then added that he had had arguments with his sister before.

We cannot confidently say that the defendant was not prejudiced by the questioning of Ponds, the prosecutorial

---

[3]Ponds testified that she had told the defendant's sister to "go rot in hell" because "[s]he seen it happen. She didn't say anything." The prosecution was apparently dropped.

comment and the instruction on the "missing witness." The defendant's case rested on his assertion that he responded in self-defense to an unjustified attack by a police officer. His claim that the same officer pushed him down the stairs after he was handcuffed described an act which, if believed, would likely add credence to his claim that the officer initiated the earlier violence. Adverse inferences drawn from the defendant's failure to call his sister as a witness could have gone to the heart of his credibility.

2. We comment briefly on other issues which may arise at retrial. (a) The judge should not have given an instruction on the right to resist an unlawful arrest. The trial was properly focused, however, on the assault and battery on a police officer charges. The jury were correctly instructed on the elements of the charges and self-defense. (b) The prosecutor was properly allowed to elicit details of a conversation the police officers had with members of the defendant's family in order to show that the officers had lawfully entered the defendant's apartment, a matter opened up by the defendant. See *Commonwealth* v. *Watson,* 377 Mass. 814, 826-831 (1979). (c) We assume that the prosecutor will not stray, intentionally or inadvertently, from the proper bounds of closing argument. See *Commonwealth* v. *Kozec,* 399 Mass. 514, 516-520 (1987); *Commonwealth* v. *Thomas,* 401 Mass. 109, 115-116 (1987). (d) We also suppose that, if a *Tuey-Rodriquez* (*Commonwealth* v. *Rodriquez,* 364 Mass. 87, 101-103 [1973]) charge is again given, no reference will be made to the possible inconvenience or expense attendant to a new trial.

*Judgments reversed.*

*Verdicts set aside.*