COMMONWEALTH *vs.* ROBERT GIBERTI. No. 99-P-948. May 31, 2001. *Evidence,* Failure to produce witness, Inference. *Practice, Criminal,* Argument by prosecutor. *Witness,* Unavailability.

Just prior to the start of Robert Giberti's jury trial on a District Court complaint charging him with lewd, wanton, and lascivious conduct (violation of G. L. c. 272, § 53), a codefendant, Terry Lens, offered a plea wherein he admitted to no wrongdoing but conceded to the strength of the Commonwealth's case against him. See *North Carolina* v. *Alford,* 400 U.S. 25 (1970); *Commonwealth* v. *Lewis,* 399 Mass. 761 (1987).[1] Lens's case was continued without finding, to be dismissed at a later date on successful completion of conditions. Giberti's case was tried to a jury and he was convicted that day, with the same judge who took Lens's plea presiding at trial. In the course of his cross-examination and in his closing, the prosecutor invited the jury to draw a negative inference from the fact that Giberti had not called Lens to testify. The judge instructed the jury on the inferences they might draw because of the "missing witness." Although Giberti made no objection at trial, he filed a motion for a new trial, citing the missing witness comments in the prosecutor's cross-examination and closing argument, and the judge's instructions. Citing "the interest of judicial economy," the Commonwealth joined in the motion for a new trial, urging, in a written stipulation and agreement, that the judge allow the motion. The judge denied the motion without comment. On Giberti's appeal of his conviction and the denial of his motion for a new trial, we reverse.

*Discussion.* Giberti argues on appeal that it was error to allow the prosecutor to cross-examine and comment on the absent witness without the judge's permission, and for the judge to instruct the jury thereon. As he failed to raise the issue at trial, and we conclude that the issues were not resurrected in the motion for new trial, we consider whether the prosecutor's comments and the judge's instruction resulted in a substantial risk of a miscarriage of justice. See *Commonwealth* v. *Lewis,* 48 Mass. App. Ct. 343, 349 (1999).

As a general proposition, missing witness material is properly brought to the jury's attention in circumstances as follows: "Where a party has knowledge of a person who can be located and brought forward, who is friendly to, or at least not hostilely disposed toward, the party, and who can be expected to give testimony of distinct importance to the case, the party would naturally offer that person as a witness. If, then, without explanation, he does not do so, the jury may, if they think reasonable in the circumstances, infer that person, had he been called, would have given testimony unfavorable to the party . . . . Because the inference, when it is made, can have a seriously adverse effect on the noncalling party — suggesting, as it does, that the party has wilfully attempted to withhold or conceal significant evidence — it should be invited only in clear cases, and with caution." *Commonwealth* v. *Figueroa,* 413 Mass. 193, 199 (1992), *S.C.,* 422 Mass. 72 (1996), quoting from *Commonwealth* v. *Schatvet,* 23 Mass. App. Ct. 130, 134 (1986). Whether to give a missing witness instruction, or to admit cross-examination and argument

---

[1]As *Lewis* points out, the trial judge should be sure that the "defendant *intelligently* concludes that his interests require entry of a guilty plea [or admission to sufficient facts for a finding of guilt] and [that] the record before the judge contains strong evidence of actual guilt." *Commonwealth* v. *Lewis,* 399 Mass. at 764, quoting from *North Carolina* v. *Alford, supra* at 37 (emphasis in orignal).

concerning a missing witness, is a decision that must be made on a case-by-case basis, in the discretion of the trial judge. See *Commonwealth* v. *Franklin*, 366 Mass. 284, 292 (1974) ("[n]o case purports to state those conditions required as a minimum before the inference is permissible"); *Commonwealth* v. *Richardson*, 429 Mass. 182, 183-184 (1999) (whether the adverse inference is permissible depends on the facts of each case); *Commonwealth* v. *Graves*, 35 Mass. App. Ct. 76, 81 (1993). A decision to permit comment on a missing witness and to instruct the jury on the inferences that may be drawn will be "overturned on appeal only if it was 'manifestly unreasonable.' " *Commonwealth* v. *Thomas*, 429 Mass. 146, 151 (1999).

Here there was no colloquy with counsel concerning the issue, and no finding on the record that an appropriate foundation had been established for the prosecutor's cross-examination and closing argument, or the judge's instruction concerning the missing witness. Further, this case does not permit an implicit ruling that the necessary foundation exists. Contrast *Commonwealth* v. *Graves*, *supra* at 83. Lens's offer of an *Alford* plea appears to have come suddenly, as often happens, just prior to the beginning of his case. The same judge who permitted the missing witness material in Giberti's case had taken Lens's *Alford* plea just prior to the start of Giberti's trial. Counsel for Giberti sought a continuance to reconsider what had been until then a strategy of having Lens and Giberti tell the jury a consistent version of events. Approaching the question "carefully and with due regard for the rights of the accused," *Commonwealth* v. *Olszewski*, 416 Mass. 707, 723 n.17 (1993), cert. denied, 513 U.S. 835 (1994), we conclude that, at a minimum, a colloquy on the question was required.

Viewed in this light, absent such inquiry, it is impossible to determine whether Lens would have been friendly toward, or at least not hostilely disposed toward, Giberti. By the nature of the *Alford* plea, Lens need not have, and did not, admit any wrongdoing. See *North Carolina* v. *Alford*, 400 U.S. at 37. No judgment of guilt was entered. Lens left the courthouse right after his plea hearing, leaving no opportunity for either the defense or the prosecution to discuss his possible testimony, and whether it would be against or in favor of Giberti. On this record, "[i]t is by no means apparent that [Lens] should be considered a witness who would be [more favorable] to [Giberti]." *Commonwealth* v. *Anderson*, 411 Mass. 279, 283 (1991). He might have chosen to remain silent, or he might have testified in support of Giberti's contention that nothing untoward occurred and that there had been no wrongdoing.

It is also not beyond imagining that Lens might have testified for the Commonwealth. Lens and Giberti were arrested at the same time. The *Alford* plea concerning this arrest, taken on the same morning as Giberti's trial, permitted at least the possibility that it was "more likely than not that [Lens] remained in the control of the Commonwealth or that [Lens] was available to the Commonwealth. If [Giberti] was *not* innocent, as the Commonwealth claims, [Lens's] inculpatory testimony would rebut the only defense that [Giberti] had — [that his meeting with Lens did not culminate in the physical acts the officer said it did]. Thus, it may have been more appropriate for the missing witness instruction to have been given against the Commonwealth, or, failing that, that no instruction be given. See *Commonwealth* v. *Lo*, 428 Mass. [45, 51 (1998)]." *Commonwealth* v. *Crawford*, 46 Mass. App. Ct. 423, 429

(1999) (emphasis in original, footnote omitted). Lens's *Alford* plea and his leaving, coupled with the trial judge's requiring that Giberti's trial begin forthwith, manifestly created a confused situation, which "cut against characterizing the case for permitting the inference as 'clear,' and [indicated] that [Lens] would [not be] . . . entirely favorably disposed to assist [either] the prosecution [or the defense]." See *Commonwealth* v. *Anderson, supra* at 283. Thus the trial judge was not permitted to tip the scale in favor of either the prosecution or the defense in giving the instruction.

"An error creates a substantial risk of a miscarriage of justice unless we are persuaded that it did not 'materially influence[]' the guilty verdict. *Commonwealth* v. *Freeman*, [352 Mass. 556,] 554 [1967]. In making that determination, we consider the strength of the Commonwealth's case against [Giberti] (without consideration of any evidence erroneously admitted), the nature of the error, [and] whether the error is 'sufficiently significant in the context of the trial to make plausible an inference that the [jury's] result might have been otherwise but for the error,' *Commonwealth* v. *Miranda*, 22 Mass. App. Ct. 10, 21 (1986)." *Commonwealth* v. *Alphas*, 430 Mass. 8, 13 (1999) (footnote omitted).

The jury here was "presented with a classic 'duel of credibility' " between the arresting officer's testimony and that of Giberti, a point made by the prosecution in closing arguments. See *Commonwealth* v. *Clark*, 23 Mass. App. Ct. 375, 378 (1987), quoting from *Commonwealth* v. *Ferreira*, 373 Mass. 116, 127 (1977). See also *Commonwealth* v. *Kowalski*, 33 Mass. App. Ct. 49, 51 (1992).

The inferences permitted by introduction of missing witness material are powerful. The nature of the errors here suggested to the jury not only that the evidence allegedly withheld would have been unfavorable to Giberti, but that Giberti "wilfully attempted to withhold or conceal significant evidence." *Commonwealth* v. *Resendes*, 30 Mass. App. Ct. 430, 432-433 (1991), quoting from *Commonwealth* v. *Schatvet*, 23 Mass. App. Ct. at 134-135. Since "the decisive, if not sole, issue at trial was witness credibility, . . . we cannot say 'with fair assurance' that the improperly admitted evidence did not have a significant impact on the jury's decision." *Commonwealth* v. *Ford*, 397 Mass. 298, 302 (1986). We therefore determine that introduction of the missing witness materials created a substantial risk of a miscarriage of justice. See *Commonwealth* v. *Clark, supra* at 381-382 (substantial risk of miscarriage of justice where wrongly admitted evidence enhanced credibility of complaining witness in case where "decisive issue . . . was the credibility of the complainant and of the defendant").

The judgment of conviction is reversed and the verdict is set aside.

*So ordered.*

*Thomas E. Hagar* for the defendant.

*Jeffrey S. Beckerman*, Assistant District Attorney, for the Commonwealth.