NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-932

COMMONWEALTH

vs.

CLAUDIMY LESSAGE.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Following a jury trial that ended in a mistrial, the defendant was convicted by a second jury of assault and battery on a family or household member in violation of G. L. c. 265, § 13M (a).  On appeal, the defendant raises four claims: (1) the second trial was barred by double jeopardy and collateral estoppel; (2) the judge erred by admitting the recording of a 911 call, which he asserts should have been excluded as a sanction for the Commonwealth's failure to timely provide it prior to trial; (3) the combination of the prosecutor's comment regarding missing witnesses and the judge's improper missing witness instruction created reversible error; and (4) the prosecutor's misstatement concerning evidence of

injury to the victim's back and stomach, which the judge failed to sufficiently address with a curative instruction, created reversible error.

We conclude that the judge improperly gave the jury a missing witness instruction and that error in combination with other errors requires us to vacate the defendant's conviction.

Background. Around 7 P.M. on June 28, 2022, police responded to a 911 call for a disturbance. The caller told the 911 operator that his mother's boyfriend had attacked his mother. The mother was subsequently identified as M.P.,[1] the boyfriend as the defendant, and the caller as M.P.'s son. While on the phone, the son stated, "Oh, bro. He just hit my mom in the face." He later stated, "He dropped my mom. He dropped my mom." The son identified his mother's boyfriend by his first name: "Claudimy." Throughout the duration of the call, a woman can be heard crying and loudly screaming in the background.[2]

When Officers Padraig Calnan and Kevin Purifory arrived, they were met by the son, a male teenager, approximately fifteen years old, at the front door. Calnan entered the apartment

---

[1] We refer to the victim by her initials. See G. L. c. 265, § 24C.

[2] A recording of the 911 call was played for the jury and entered in evidence.

first.[3]  He testified that he looked up the staircase inside the doorway and saw feet at the top of the stairs.  He then climbed the stairs and saw the defendant holding M.P. by the back of her shirt.  She was on her side struggling and screaming.  The defendant reached down and "lightly punched" M.P. in the back.

Purifory entered the apartment a few seconds after Calnan and saw the defendant pulling M.P. up the stairs while she was lying on the stairs.  Unlike Calnan, Purifory did not see the defendant strike M.P.

Both officers testified that, upon Calnan's command, the defendant let go of M.P.  Purifory then brought M.P. downstairs and into the kitchen.  At the time, M.P. was screaming.  A photograph of M.P., showing significant bruising around her left eye, was entered in evidence.

The defendant testified at trial and provided a different version of events.  He claimed that he had an argument with M.P. after he told her he had been speaking with a female cousin on the phone in their bedroom.[4]  M.P. accused him of lying.  She demanded his phone and when he refused to give it to her, she

---

[3] Neither of the responding officers testified that they had spoken with the son and they did not identify him by name at trial.

[4] At trial the defendant referred to M.P. as his wife. There is no dispute that the two were married at that time.

3

tried to pull it out of his hands. She was bigger and stronger than him. As she was pulling, she lost her grip on the phone, fell, and struck her head. After M.P. fell, she "went down the stairs crying." The defendant stayed in his bedroom, where the police found him and arrested him.

The defendant denied that he hit M.P. in the face or that he "dropped" her. He claimed that M.P.'s son was not home at the time of the confrontation. The defendant said the son came in after the confrontation, saw his mother crying, and called 911 at that point.

A District Court complaint issued, charging the defendant with assault and battery on a family or household member, in violation of G. L. c. 265, § 13M (a) (count one) and assault and battery on a pregnant victim, in violation of G. L. c. 265, § 13A (b) (count two). At the first trial, M.P. asserted her marital privilege and did not testify. Neither did her son. As a result, the Commonwealth could not prove that M.P. was a family or household member, and so the Commonwealth proceeded on count two only.[5] The jury could not reach a verdict and the judge declared a mistrial.

---

[5] As discussed below, by the time of the second trial, the Commonwealth had obtained a recording of the 911 tape on which it relied to prove that M.P. was a family or household member.

At the second trial, which took place two weeks later before a second judge, M.P. again asserted her marital privilege; however, by this time, the Commonwealth had obtained the 911 tape and therefore could prove that M.P. was a family or household member. Accordingly, the prosecutor informed the judge that it would proceed on both counts. Following the close of the Commonwealth's case, the judge allowed the defendant's motion for a required finding on count two due to a lack of evidence that the defendant knew M.P. was pregnant. The jury found the defendant guilty on count one. The defendant filed a timely notice of appeal.

Discussion. 1. Missing witness issues. We begin our discussion with the errors that stemmed from (1) the fact that M.P. was unavailable to testify because she asserted her marital privilege and (2) the fact that neither party called the son. The defendant argues that the judge committed two errors in the circumstances presented: (1) she invited the prosecutor to make an improper burden-shifting argument and (2) she then gave a missing witness instruction permitting the jury to draw an adverse inference against the defendant based on his failure to call M.P. and her son. We agree with the defendant that, as the Commonwealth concedes, the judge erred by giving a missing witness instruction and conclude that, despite the strength of the Commonwealth's evidence, that error created a substantial

5

risk of a miscarriage of justice when considered in combination with other errors, including the unwarranted invitation to the prosecutor to make an improper argument, which the prosecutor did.

The issue arose as follows. In his closing argument, defense counsel highlighted the fact that neither the 911 caller nor M.P. testified. He argued:

> "you heard a 911 call, . . . we don't even have a last name. We don't have the age of this person, and this person didn't testify. . . . [D]on't you think you would want to hear from this person . . . ? Don't you think I should get an opportunity to ask this person questions to see if this person has any motives, to see if there's any inconsistencies? . . . Then think of who else we didn't hear today. Well, [M.P.], right? This whole case is supposedly about her. She's the complaining witness in the case. She's the most important person. She could tell you what happened. She didn't see a small snippet like Officer Calnan did. She was presumably the best witness. She was there for the entire events, but she didn't testify today. And the Commonwealth has the burden of proof in this case."

Immediately after defense counsel completed his argument, the judge called the parties to sidebar and said, "when you're going to argue to the jury that they [can] . . . make an inference as to why the witnesses are absent, you need to tell me that . . . . I'm going to allow [the prosecutor] to argue that those witnesses were just as accessible to [defense counsel] as they were to the Commonwealth." (Defense counsel responded, "I don't think I said the Commonwealth to call them

6

[sic], but it is their burden of proof." The judge stated that the prosecutor could, if he wanted to do so, "say those witnesses were just as available to the defense as they were to the Commonwealth." Defense counsel acknowledged that he "could have tried to get in touch with" M.P.'s son.

In his closing, the prosecutor argued: "I would also point out defense counsel made a lot of hay about witnesses that the Commonwealth could have, should have called not being here. I would point out to you the defense also could have called those witnesses and he did not."

Defense counsel objected to the prosecutor's comment. He reminded the judge, "I said it was the Commonwealth's burden of proof and that [M.P.] didn't testify. I didn't say that they didn't call her."[6] The judge responded as follows:

> "No, you said . . . there were two witnesses that they had available to them who did not testify, which is why I allowed [the prosecutor] the leeway to do that. . . . [Y]ou most certainly did say on several occasions that the Commonwealth didn't call these two witnesses. . . . [Y]ou inferred . . . that in fact [M.P.] was available and the Commonwealth . . . determined they didn't want to call her."

During her final charge, the judge gave parallel missing witness instructions relating to both the defendant and the Commonwealth. She thereby invited the jury to consider whether

---

[6] As noted above, M.P. asserted her marital privilege and therefore was not available to either party.

to draw adverse inferences against either party based on their failure to call relevant witnesses.  The defendant did not object to this instruction.

As a preliminary matter, it is debatable whether defense counsel made a missing witness argument or merely argued that the Commonwealth had failed to produce sufficient evidence to satisfy its burden of proof.[7]  Even if we were to assume that defense counsel's argument was improper, the judge should have instructed the jury to disregard it.  See Commonwealth v. Pena, 455 Mass. 1, 15-17 (2009).  Instead, as previously noted, she made two errors.

First, the judge invited the prosecutor "to argue that [M.P. and her son] were just as accessible to [the defense] as they were to the Commonwealth."  The prosecutor accepted the invitation and argued that "the defense also could have called [M.P. or her son] and he did not."  This was an improper burden-shifting argument.  "A prosecutor cannot . . . make statements that shift the burden of proof from the Commonwealth to the

---

[7] The Supreme Judicial Court explained the distinction between these two types of argument in Commonwealth v. Salentino, 449 Mass. 657, 672 (2007).  "Nothing . . . prohibits a defense attorney from arguing to the jury, in a case where there is no missing witness instruction, that the Commonwealth has not produced sufficient evidence to warrant a conviction beyond a reasonable doubt.  This is standard argument that can be made in any case."  Id.

defendant." Commonwealth v. Amirault, 404 Mass. 221, 240 (1989). "[A] prosecutor shifts the burden of proof" by calling "the jury's attention to the defendant's failure to call a witness or witnesses." Commonwealth v. Tu Trinh, 458 Mass. 776, 787 (2011). This violates the defendant's constitutional rights because, "[i]n each case, the prosecution is signaling to the jury that the defendant has an affirmative duty to bring forth evidence of his innocence, thereby lessening the Commonwealth's burden to prove every element of a crime." Id.

Second, the judge gave an improper missing witness instruction. Again, assuming, arguendo, that defense counsel made a missing witness argument based on the Commonwealth's failure to call M.P. and her son, the proper course of action would have been for the judge to instruct the jury to disregard it.

The rationale for a missing witness inference is that if a party has knowledge of a person who is available and not hostilely disposed towards them, who could give "testimony of distinct importance to the case," the party "would naturally offer that person as a witness" (citation omitted). Commonwealth v. Smith, 49 Mass. App. Ct. 827, 829-830 (2000). If the party does not offer that person as a witness, jurors may "infer that that person, had he been called, would have given testimony unfavorable to the party" (citation omitted). Id.

9

"Because the inference, when it is made, can have a seriously adverse effect on the non-calling party -- suggesting, as it does, that the party has willfully attempted to withhold or conceal significant evidence -- it should be invited only in clear cases, and with caution."  Commonwealth v. Schatvet, 23 Mass. App. Ct. 130, 134 (1986).  "Circumspection in this matter is especially called for where the inference would run against a defendant in a criminal prosecution, for the inference may come uncomfortably close to invading constitutional rights," including "the privilege against self-incrimination . . . and the Commonwealth's fixed burden to prove guilt beyond a reasonable doubt."  Id. at 135 & n.10.

As we have noted, the Commonwealth concedes that the judge erred in giving a missing witness instruction based on the defendant's failure to call M.P. or her son.  We agree.  M.P. had asserted her marital privilege.  Therefore, she was unavailable to both parties.  Commonwealth v. DiPietro, 373 Mass. 369, 382 (1977) (witness who exercises privilege not to testify is unavailable); Commonwealth v. Springfield Terminal Ry. Co., 80 Mass. App. Ct. 22, 42 & n.31 (2011) (trial judge properly declined to give missing witness instruction against Commonwealth for witness who had invoked Fifth Amendment privilege).

10

As to M.P.'s son, the defendant had a reasonable basis for not calling him as a witness. The defense could draw a fair, and indeed obvious, inference that the son would be biased in favor of his mother and against the defendant. See Commonwealth v. Resendes, 30 Mass. App. Ct. 430, 431-434 (1991) (no foundation for missing witness inference when witness and defendant had unfriendly relationship).

Although defense counsel objected to the prosecutor's burden-shifting argument, he did not object to the judge's missing witness instruction. As explained below, because the prosecutor also misstated the evidence, and the defense lodged a timely objection to that error, we will consider the cumulative prejudicial effect of both of the prosecutor's errors under the prejudicial error standard. See Commonwealth v. Borodine, 371 Mass. 1, 9-11 (1976) ("the prejudicial impact of the prosecutor's charge should be assessed by looking at the combined effect of all his errors"); Commonwealth v. Griffith, 45 Mass. App. Ct. 784, 785 (1998) ("When proper objections have been taken in some instances, unobjected-to faults may be cumulated and weighed with those claims of error that have been adequately preserved").

2. The prosecutor's misstatement of the evidence. The prosecutor erroneously asserted that M.P.'s medical records, which were admitted in evidence as "trial exhibit 1," referenced

11

injuries to her "back and stomach."[8]  Defense counsel objected.

In fact, as the judge recognized, the redacted medical records

did not indicate that M.P. suffered any injuries to her back or

stomach.  To the contrary, they indicated, "There is no

tenderness on exam of back and abdomen."

"A prosecutor may not use closing argument to argue or

suggest facts not previously introduced in evidence" (quotation

and citation omitted).  Commonwealth v. Beaudry, 445 Mass. 577,

580 (2005).  See Commonwealth v. Rutherford, 476 Mass. 639, 643

(2017) ("closing arguments must be limited to facts in evidence

and the fair inferences that may be drawn from those facts").

See also Commonwealth v. Niemic, 483 Mass. 571, 592 (2019) ("a

prosecutor may not argue facts not in evidence or misstate the

evidence").

Because defense counsel made a timely objection to this

misstatement, we review to determine whether it was prejudicial.

See Commonwealth v. Hrabak, 440 Mass. 650, 657 n.6 (2004).

> "Where, as here, the prosecutor argued facts in
> closing argument that find no support in the evidence
> at trial and where that error is preserved by a timely
> objection, the error is nonprejudicial only if we are

---

[8] To be clear, we do not imply that the error here was
intentional.  As the prosecutor explained to the judge, the
redacted portion of the medical records indicated that M.P. had
reported injuries to her back and stomach during the medical
exam, but the exam revealed "no tenderness" of the "back and
abdomen."  That said, even unintentional misstatements have
consequences.

> sure that the error did not influence the jury, or had but very slight effect" (quotation and citation omitted).

Commonwealth v. Tate, 486 Mass. 663, 669 (2021). In determining whether the error was prejudicial, we consider the following factors: "[1] whether the error[s] [were] limited to collateral issues or went to the heart of the case; [2] what specific or general instructions the judge gave the jury which may have mitigated the mistake[s]; and [3] whether the error[s], in the circumstances, possibly made a difference in the jury's conclusions" (citation omitted). Id. "[T]he entire record, including the balance of the prosecutor's argument, [is] relevant in determining whether the error was prejudicial to the point of requiring a reversal of the conviction" (citation omitted). Id.

a. Heart of the case. First, the error "went to the heart of the case" (citation omitted). Tate, 486 Mass. at 669. The central issue was whether the defendant struck M.P. One of the responding police officers testified he saw the defendant "lightly punch" M.P. in the back. Thus, evidence of a back injury in the medical records would have corroborated the officer's testimony. Misstatements of the evidence that "[go] to the heart of the case" are particularly prejudicial. See Commonwealth v. Silva-Santiago, 453 Mass. 782, 808 (2009).

13

b.  Curative instructions.  Second, even after the defendant objected to the prosecutor's error, and the judge acknowledged it was error, the judge did not give a specific curative instruction.  Instead, the judge simply stated, "It will stand for itself."  The judge did give a general instruction that

> "the opening statements and the closing arguments of each of the lawyers are not a substitute for the evidence.  Those statements are only intended to assist you in understanding the evidence and the contentions of each of the parties.  If your memory of the testimony differs from the attorneys, you are to follow your own recollection."

But a general instruction did not sufficiently address the problem.  See Beaudry, 445 Mass. at 585 (reversal warranted notwithstanding judge's instruction that "closing arguments are not evidence, and that jurors should rely on their memory of the evidence if their memory is different from that of an attorney"; instructions were "standard fare" that "[did] not address the particular problem . . . .  [T]he prosecutor was inviting the jury to draw an inference that could not be supported by the record"); Commonwealth v. Santiago, 425 Mass. 491, 501 (1997) (same).

c.  Impact on the jury.  Third, we consider "whether the error[s], in the circumstances, possibly made a difference in the jury's conclusions" (citation omitted).  Tate, 486 Mass. at 669.  In considering whether the errors possibly made a

14

difference in the jury's conclusions"[9] we must consider all the errors in the prosecutor's closing "collectively." Silva-Santiago, 453 Mass. at 807. Therefore, we must consider the combined effect of the prosecutor's erroneous claim that the medical records referenced injuries to M.P.'s back and stomach, and his erroneous claim that the defendant could have called M.P. to testify, which, as we have discussed, was exacerbated by the judge's erroneous instruction that the jury could "infer that [M.P.'s and her son's] testimony would not have been favorable to the defendant."

To begin, we recognize the Commonwealth presented a strong case in the second trial. Most importantly, it introduced a 911 call in which M.P.'s son related what he said he was seeing in real time. Specifically, he said that the defendant hit his mom in the face and a woman could be heard screaming in the background. He also said that the defendant "dropped" his mom. In addition, the Commonwealth introduced a photograph of M.P. depicting a bruise to her left eye. This evidence tended to corroborate Calnan's observations and contradicted the defendant's testimony. At the same time, however, we note that

_____

[9] See Tate, 486 Mass. at 669 ("the error is nonprejudicial only if we are sure that the error did not influence the jury, or had but very slight effect" [quotation and citation omitted]).

both of these errors bore upon the defendant's credibility, and therefore, we cannot say that the errors had only a "slight effect." See Tate, 486 Mass. at 669, quoting Commonwealth v. Alvarez, 480 Mass. 299, 305 (2018).

In reaching our conclusion, we note that the prosecutor relied on his mischaracterization of the medical records to impeach the defendant's credibility:

> "Now the defendant has testified that he never hit the victim. According to him, he was trying to keep the victim from taking his phone and when he lost his grip on the phone, the victim fell and injured herself. That explanation is completely inconsistent with the injuries the victim suffered. The victim falling in that way might explain injuries to her back or it might explain injuries to her front, but it does not explain both."

In fact, the redacted medical records did not indicate that M.P. had suffered a back injury. Therefore, after excising the prosecutor's erroneous claim, the defendant's assertion that M.P. fell while trying to seize his phone "might" as the prosecutor acknowledged, "explain injuries to her front."[10]

Considering the two errors collectively, we conclude that it is "possibl[e]" that they "made a difference in the jury's

---

[10] In addition, because the jury had been informed that M.P. was pregnant at the time of [the alleged assault and battery] and that the defendant knew or had reason to know that [she] was pregnant, there was a risk that the prosecutor's improper reference to stomach injuries had an unduly prejudicial effect that was likely to produce an emotional response or even bias in the jury.

16

conclusions" (citation omitted). <u>Tate</u>, 486 Mass. at 669.  The prosecutor's misstatement of the evidence impeached the defendant's credibility, and the judge gave only a general instruction that closing arguments are not evidence, despite knowledge of the misstatement.  Moreover, the judge erroneously authorized the prosecutor to argue that the defendant could have called M.P. and her son and then erroneously authorized the jury to infer that the defendant did not call M.P. and her son because their testimony would have been unfavorable to the defendant.  See <u>Niemic</u>, 483 Mass. at 595.  See also <u>Commonwealth</u> v. <u>Giberti</u>, 51 Mass. App. Ct. 907, 909 (2001) (substantial risk of miscarriage of justice where judge gave unwarranted missing witness instruction and "decisive" issue was "credibility" [citation omitted]).  In sum, this is one of those rare cases in which the cumulative prejudicial effect of multiple errors creates a possibility of a different outcome, notwithstanding strong evidence of guilt.

3.  <u>Double jeopardy</u>.  The defendant asserts that due process principles prohibited the Commonwealth from pursuing count one (assault and battery on a family or household member).  The Commonwealth concedes that in the first trial, it did not introduce any evidence that M.P. was a family or household member of the defendant and, therefore, that double jeopardy principles barred the trial of the defendant on that count at

17

the second trial. We agree. "[J]eopardy . . . terminates when the Commonwealth fails to present evidence legally sufficient to convict, the defendant moves for a required finding of not guilty, and the judge declares a mistrial after the jury has failed to agree on a verdict." Berry v. Commonwealth, 393 Mass. 793, 799 (1985).

4. Admissibility of 911 recording. In the event of a retrial on the lesser included offense of assault and battery, we address the defendant's claim that the judge abused her discretion in declining to exclude the 911 recording on the ground that the Commonwealth violated its obligations to produce the recording prior to the day of the second trial. On the morning of the first day of second trial, the Commonwealth filed a motion in limine to admit the 911 recording. The defendant objected on the ground that the Commonwealth had not previously provided him with the name of the 911 dispatcher. The judge granted the Commonwealth's motion after defense counsel admitted he was aware of the existence of the 911 recording prior to trial and the Commonwealth made the 911 dispatcher available for a voir dire. On appeal, the defendant claims for the first time that the 911 recording should have been excluded because he was not given a copy of the 911 recording during pretrial discovery.

We conclude that the judge did not abuse her discretion in admitting the 911 recording. At trial, defense counsel never

18

claimed that the Commonwealth had withheld the 911 recording. Moreover, the judge conducted a voir dire of the 911 dispatcher prior to trial, providing adequate notice of his testimony.

Conclusion.  On the charge of assault and battery on a family or household member, the judgment is vacated.  So much of the verdict on that charge as finds the defendant guilty of the lesser included offense of assault and battery is set aside, and the defendant may be retried on that portion of the charge if the Commonwealth so chooses; on the remaining portion of the charge ("on a family or household member"), a verdict shall enter for the defendant.

So ordered.

By the Court (Vuono, Henry & Wood, JJ.[11]),

Clerk

Entered:  September 5, 2025.

---

[11] The panelists are listed in order of seniority.